CAMBRIDGE ELECTRONICS CORPO-
RATION, a Republic of Philippines
corporation, Plaintiff,

v.

MGA ELECTRONICS, INC., a California
Corporation, et al., Defendants.

No. CV 02–8636MMM(PJWX).

United States District Court,
C.D. California.

June 22, 2004.

Antonio Valla, David S. Toy, Tali A. Buchman, Lafayette, CA, for Plaintiff.

Barry Macnaughton, Andres Felipe Quintana, Beverly Hills, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MORROW, District Judge.

Plaintiff commenced this contract action on November 11, 2002, naming MGA Electronics, Inc., and Roger T. Featherston as defendants. After MGA filed for bankruptcy, the court granted plaintiff leave to file an amended complaint that asserted claims against Roger A. Featherston, MGA Midwest, LLC, RTF Associates, LLC, and Chandler Lake Elizabeth Development Group, LLC. All of the defendants have now moved for summary judgment on the claims stated against them in plaintiff's first amended complaint.[1]

## I. FACTUAL BACKGROUND [2]

Cambridge Electronics Corporation is a citizen of the Phillipines, while all defendants

---

1. Because of its bankruptcy filing, defendant MGA Electronics, Inc., never filed a response to the first amended complaint. The court has dismissed defendant Rosalyn De'Pree pursuant to stipulation of the parties. (See Docket Entry No. 108.) Accordingly, the court refers to the defendants who are moving for summary judgment simply as "defendants."

2. Unless otherwise noted, the facts recited are undisputed. Several of plaintiff's responses to Defendants' Separate Statement of Uncontroverted Facts and Issues of Law ("Defs.' Facts") assert that plaintiff "does not have sufficient knowledge to determine" whether or not a fact is true. (See, e.g., Plaintiff's Separate Statement of Genuine Issues of Material Fact ("Pl.'s Issues"), ¶ 1.) At the summary judgment stage, a litigant may not rest on its pleadings and the factual allegations contained therein. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (a party cannot "rest on mere allegations or denials of his pleading" in opposing summary judgment). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48, 106 S.Ct. 2505 (emphasis original). Thus, in responding to defendants' purportedly undisputed facts, plaintiff must set forth, by affidavit or otherwise as provided in Rule 56, *"specific facts"* showing that there is a genuine issue for trial." *Id.* at 250, 106 S.Ct. 2505 (emphasis added); FED.R.CIV.PROC. 56(e). Plaintiff's statement that it lacks "sufficient knowledge" to contest certain facts is not adequate to raise a triable issue for

are citizens of California.[3] Plaintiff filed its original complaint on November 12, 2002. After MGA, Electronics, Inc., filed for bankruptcy, plaintiff filed a first amended complaint naming new defendants and alleging that certain defendants had violated California's Uniform Fraudulent Transfers Act, conspired fraudulently to transfer MGA assets, violated California's Bulk Sale Law, and violated California Business and Professions Code § 17200.[4] The first five claims for relief in the amended complaint are directed solely against MGA, which did not file a responsive pleading because it sought bankruptcy protection.[5] The claims for relief directed against the moving defendants are

based upon allegations that Roger T. Featherston was the alter ego of MGA, and that all defendants conspired to commit the above torts.[6]

MGA was incorporated in California in 1987. The company's original owner was Roger A. Featherston.[7] In 1989 or 1990, Roger A. sold his stock in MGA to Roger T. Featherston and Fred Meyer.[8] Subsequent to the sale, Roger A. had no ownership interest in MGA, nor did the company employ him in any capacity.[9] During the mid–1990's, Roger T. Featherston purchased the MGA stock owned by Fred Meyer, and became MGA's President and sole shareholder.[10]

trial. Thus, where defendants' facts are supported by evidence in the record, and do not constitute legal conclusions, and plaintiff has responded only in this fashion, the court will consider the facts undisputed for purposes of this motion. Several of defendants' purported facts, however, are legal conclusions. The court has not considered these in assessing whether summary judgment should be granted.

3. Defs.' Facts, ¶ 1. (Plaintiff's assertion that it "does not have sufficient knowledge" to dispute certain portions of defendants' statement is insufficient to create a triable issue of fact. As defendants' facts are supported by the record and are not legal conclusions, the court accepts them as undisputed. See note 2, *supra*.)

4. Defs.' Facts, ¶ 2; Pl.'s Issues, ¶ 2.

5. Defs.' Facts, ¶ 3; Pl.'s Issues, ¶ 3.

6. Defs.' Facts, ¶ 3; Pl.'s Issues, ¶ 3.

7. Defs.' Facts, ¶ 5. (Plaintiff's assertion that it "does not have sufficient knowledge" to dispute certain portions of defendants' statement is insufficient to create a triable issue of fact. As defendants' facts are supported by the record and are not legal conclusions, the court accepts them as undisputed. See note 2, *supra*.) Roger A. Featherston is the father of Roger T. Featherston. (Declaration of Roger A. Featherston ("RAF Decl."), ¶ 1.)

8. Defs.' Facts, ¶ 6. (Plaintiff does not respond to this portion of defendants' statement of undisputed facts. As the fact is supported by evidence in the record, the court accepts it as undisputed.)

9. Defs.' Facts, ¶ 6. Plaintiff contends "[i]t is unclear whether Roger A. Featherston had any ownership interest in MGA given the nature of his continued involvement in the company in providing it with significant amounts of cash in the form of promissory notes...." (Pl.'s Issues, ¶ 6.) The only evidence plaintiff cites, however,

does not tend to show that Roger A. had an *ownership* interest in MGA. The fact that Roger A. may have loaned, or given, money to MGA does not tend to show that he had an "equity interest" in MGA, and plaintiff cites no legal authority suggesting otherwise. Moreover, plaintiff's citation to paragraph 10 of the declaration of attorney Steven J. Willock ("Willock Decl.") is puzzling. That paragraph references a sheaf of documents, but provides no explanation as to how the documents show that Roger A. had an ownership interest in MGA. Plaintiff cannot cite pages of record evidence with no explanation, and expect the court to discern how the documents create issues of fact. See *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir.2003) ("A party opposing summary judgment must direct our attention to specific, triable facts. General references without page or line numbers are not sufficiently specific" (internal citation omitted)); *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1030–31 (9th Cir.2001) ("A lawyer drafting an opposition to a summary judgment motion may easily show a judge, in the opposition, the evidence that the lawyer wants the judge to read. It is absurdly difficult for a judge to perform a search, unassisted by counsel, through the entire record, to look for such evidence.... Rule 56(e) requires that the adverse party's 'response,' not just the adverse party's various other papers, 'set forth specific facts' establishing a genuine issue"); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 285 (7th Cir.1997) ("The rule requires *specific* references to affidavits and parts of the record, not to entire affidavits ..." (emphasis original)). The court, accordingly, finds the fact that Roger A. had no ownership interest in MGA undisputed for purposes of this motion.

10. Defs.' Facts, ¶ 7. (Roger T. Featherston's declaration is sufficient evidence of these facts. Plaintiff's attempt to dispute the facts with argument, but no evidence, is unavailing. See note 2, *supra*.)

MGA's business involved the procurement of electronic components, among other things, from manufacturing concerns for ultimate resale to the end users of such goods.[11] MGA maintained its status as a California corporation in good standing.[12]

Plaintiff Cambridge Electronics was one of MGA's most significant suppliers of electronic components.[13] For more than twelve years, MGA financed its business operations primarily through the use of a cash flow formula whereby its customers were required to pay for goods on a 10–day net basis with MGA's suppliers agreeing to be paid on terms 30–day net or longer.[14] Plexus Corporation, Martek Power, and Power Wave Corporation were MGA's most important customers; they accounted for approximately 70 percent of MGA's sales revenue.[15] MGA's sales experienced steady growth through ap-proximately 1999 or early 2000, due to revenue from Plexus, Martek, and Power Wave.[16] Over a relatively short period of time thereafter, however, MGA's sales to these entities declined.[17] In 2002, Roger A. Featherston transferred $500,000 to MGA. The parties dispute the legal classification, and legal significance of the transfer.[18] At no time did Roger A. purchase any of MGA's assets.[19] Moreover, he has never been an owner, member, employee, or agent of defendants RTF Associates, LLC, Chandler Lake Elizabeth Development Group, LLC, or Midwest LLC.[20]

Prior to MGA's bankruptcy, Roger T. Featherston took steps to save MGA, such as cutting overhead, deferring his compensation and loaning nearly $100,000 to MGA. This amount has not been repaid.[21] Roger T. did

11. Defs.' Facts, ¶ 8. (Plaintiff's assertion that it "does not have sufficient knowledge" to dispute certain portions of defendants' statement is insufficient to create a triable issue of fact. As defendants' facts are supported by the record and are not legal conclusions, the court accepts them as undisputed. See note 2, *supra*.)

12. Defs.' Facts, ¶ 11. (Plaintiff's assertion that it "does not have sufficient knowledge" to dispute certain portions of defendants' statement is insufficient to create a triable issue of fact. As defendants' facts are supported by the record and are not legal conclusions, the court accepts them as undisputed. See note 2, *supra*.)

13. Defs.' Facts, ¶ 9. (Plaintiff's assertion that it "does not have sufficient knowledge" to dispute certain portions of defendants' statement is insufficient to create a triable issue of fact. As defendants' facts are supported by the record and are not legal conclusions, the court accepts them as undisputed. See note 2, *supra*.)

14. Defs.' Facts, ¶ 10. (Plaintiff's assertion that it "does not have sufficient knowledge" to dispute certain portions of defendants' statement is insufficient to create a triable issue of fact. As defendants' facts are supported by the record and are not legal conclusions, the court accepts them as undisputed. See note 2, *supra*.)

15. Defs.' Facts, ¶ 13. (Plaintiff's assertion that it "does not have sufficient knowledge" to dispute certain portions of defendants' statement is insufficient to create a triable issue of fact. As defendants' facts are supported by the record and are not legal conclusions, the court accepts them as undisputed. See note 2, *supra*.)

16. Defs.' Facts, ¶ 14. (Plaintiff's assertion that it "does not have sufficient knowledge" to dispute certain portions of defendants' statement is insufficient to create a triable issue of fact. As defendants' facts are supported by the record and are not legal conclusions, the court accepts them as undisputed. See note 2, *supra*.)

17. Defs.' Facts, ¶ 15. (Plaintiff provide no evidence controverting this fact. It controverts only the assertion that the loss of sales "caused" MGA to go out of business.)

18. Defs.' Facts, ¶ 16; Pl.'s Issue, ¶ 16.

19. Defs.' Facts, ¶ 19. (Plaintiff's assertion that it "does not have sufficient knowledge" to dispute certain portions of defendants' statement is insufficient to create a triable issue of fact. As defendants' facts are supported by the record and are not legal conclusions, the court accepts them as undisputed. See note 2, *supra*.)

20. Defs.' Facts, ¶ 20. (Plaintiff's statement that it "does not have sufficient knowledge" to contest certain portions of defendants' statement here is insufficient to create an issue of fact. As defendants' facts are supported by the record and are not legal conclusions, the court, accordingly, accepts defendants' statement of facts here as undisputed. See note 2, *supra*.)

21. Defs.' Facts, ¶ 21. Plaintiff's statement that there "are genuine issues of material fact" regarding these measures, with no citation to evidence, but merely to portions of plaintiff's brief, is not adequate to create a genuine issue of material fact. See note 2, *supra;* see also *SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F.Supp.2d 1081, 1095, n. 10 (S.D.Cal.2002) ("The Court notes that SAES Getters's contentions in its brief are not 'evidence,' and thus could not be accept-

not purchase any of MGA's assets.[22] RTF Associates, LLC, Chandler Lake Elizabeth Development Group, LLC, and MGA Midwest LLC did not purchase or otherwise receive any assets that once belonged to MGA.[23]

## II. DISCUSSION

### A. Standard Governing Motions For Summary Judgment

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.PROC. 56(c). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses which demonstrate the absence of a genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue as to which the nonmoving party will have the burden of proof at trial, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. See *id.* If the moving party meets its initial burden,

the nonmoving party must then set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); FED.R.CIV.PROC. 56(e).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. See *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987). The evidence presented by the parties must be admissible. FED. R.CIV.PROC. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. See *Falls Riverway Realty, Inc. v. Niagara Falls*, 754 F.2d 49, 56 (2d Cir.1985); *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

### B. Whether Plaintiff Has Adduced Sufficient Evidence To Defeat Summary Judgment On Roger T. Featherston's Liability For The Acts Of MGA [24]

### 1. Whether Plaintiff Can Offer Evidence Or Legal Theories Not Disclosed In Its Interrogatory Responses

Rule 26(e) of the Federal Rules of Civil Procedure provides that litigants have a

---

ed by the Court as evidence..."); *Browell v. Lemahieu*, 127 F.Supp.2d 1117, 1125 (D.Haw. 2000) ("Plaintiff contends that there are 'genuine issues of material fact outstanding concerning the IEP's transition services.' ... However, nowhere does Plaintiff show a piece of evidence that establishes this statement. Instead, Plaintiff cites to his brief, which is not evidence ...").

**22.** Defs.' Facts, ¶ 25, (Plaintiff's assertion that it "does not have sufficient knowledge" to dispute certain portions of defendants' statement is insufficient to create a triable issue of fact. As defendants' facts are supported by the record and are not legal conclusions, the court accepts them as undisputed. See note 2, *supra.*)

**23.** Defs.' Facts, ¶ 26. (Plaintiff's assertion that it "does not have sufficient knowledge" to dispute

certain portions of defendants' statement is insufficient to create a triable issue of fact. As defendants' facts are supported by the record and are not legal conclusions, the court accepts them as undisputed. See note 2, *supra.*)

**24.** The sixth claim for relief in plaintiff's first amended complaint sought "judgment against Roger T. Featherston ... on disregard of the corporate entity." (First Amended Complaint, Sixth Claim for Relief.) Piercing the corporate veil, or "disregard of the corporate entity" is not an independent cause of action, but merely a method of imposing liability on an underlying cause of action. See *In re Grothues*, 226 F.3d 334, 337–38 (5th Cir.2000) (recognizing that an alter ego theory is a remedy to enforce a substantive right, not an independent cause of action); *Thomas v. Peacock*, 39 F.3d 493, 499 (4th Cir.

continuing duty "seasonably" to supplement all interrogatory responses under Rule 33 if their prior responses are either incomplete or incorrect. FED.R.CIV.PROC. 26(e)(2) ("A party is under a duty seasonably to amend a prior response to an interrogatory ... if the party learns that the response is in some material respect incomplete or incorrect ..."). Rule 37 provides that "[a] party that without substantial justification fails to disclose information required by ... Rule 26(e)(2) ... shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." FED.R.CIV.PROC. 37(c)(1). Excluding evidence at trial as a sanction for failure to disclose under Rule 26(e)(2) in a timely fashion is " 'automatic and mandatory' unless the party can show the violation is 'either justified or harmless.' " *Miksis v. Howard,* 106 F.3d 754, 760 (7th Cir.1997); see also *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir.2001) ("Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed.... This particular subsection, implemented in the 1993 amendments to the Rules, is a recognized broadening of the sanctioning power.... The Advisory Committee Notes describe it as a 'self-executing,' 'automatic' sanction to 'provide[ ] a strong inducement for disclosure of material....' Courts have upheld the use of the sanction even when a litigant's entire cause of action or defense has been precluded.... Two express exceptions ameliorate the harshness of Rule 37(c)(1): The information

may be introduced if the parties' failure to disclose the required information is substantially justified or harmless"); *Self–Insurance Institute of America, Inc. v. Software and Information Industry Ass'n.,* 208 F.Supp.2d 1058, 1066 (C.D.Cal.2000) ("Rule 37(c)(1) precludes the use of evidence not disclosed as required under Rule 26(a) or 26(e)(1)").

■ On March 10, 2004, defendants propounded several interrogatories asking plaintiff to explain the theories of liability underlying its claims for relief, and the evidence it had gathered in support of those claims. Regarding the alter ego claim, defendants asked that plaintiff

> "[s]tate each and every fact which in any way supports Plaintiff's contention that Roger T. Featherston and MGA Electronics, Inc. ('MGA') are the alter egos of one another." [25]

Plaintiff responded on April 30, 2004, stating:

> "Responding Party objects to this interrogatory on the grounds that it seeks premature disclosure of information. Responding Party objects to this interrogatory on the grounds that this interrogatory is overly broad, vague, ambiguous, and therefore unduly burdensome." [26]

Defendants also propounded more specific interrogatories on the subject of alter ego liability. They asked that plaintiff

> "[d]escribe the 'business, personal and financial affairs and funds' which Roger T. Featherston has commingled with the 'affairs and funds of the entity defendants,'

1994), rev'd. on other grounds, 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996); *Green Atlas Shipping S.A. v. United States,* 306 F.Supp.2d 974, 977 (D.Or.2003) ("I agree with Taiheiyo that pierced corporate veil is not a separate cause of action and I will dismiss the fifteenth claim but allow the United States to make its alter ego allegations in the context of the remaining underlying substantive claims for liability in this action"); William Fletcher, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS, § 41 (perm. ed.1990). "[U]nder the Federal Rules of Civil Procedure[, however,] the concept of 'cause of action' ... has vanished from federal law, and been replaced by notice pleading." *International Armor & Limousine Co. v. Moloney Coachbuilders, Inc.,* 272 F.3d 912, 915 (7th Cir.2001); see also *Bartholet v. Reishauer A.G.,* 953 F.2d 1073,

1078 (7th Cir.1992) ("Instead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations"). Read in context, plaintiff's sixth claim for relief seeks to hold Roger T. Featherston individually liable on the contract-based claims stated against MGA in the first five causes of action. See FED.R.CIV.PROC. 8(f) ("All pleadings shall be construed as to do substantial justice").

**25.** Declaration of Guy Nicholson in Support of Defendants' Motion for Summary Judgment ("Nicholson Decl."), Exh. 9.

**26.** *Id.,* Exh. 10.

as alleged in paragraph 53 of the first amended complaint." [27]

They also asked that plaintiff

"[d]escribe and itemize each 'personal debt and obligation' which the 'entity defendants' have 'assumed or paid' on behalf of Roger T. Featherston, as alleged in paragraph 54 of the first amended complaint." [28]

Defendants requested that plaintiff

"[d]escribe and itemize each 'corporate debt and obligation' paid by Roger T. Featherston on behalf of MGA, as alleged in paragraph 54 of the first amended complaint." [29]

Finally, they asked that plaintiff

"[s]tate the amount of money 'siphoned off' by Roger T. Featherston, as alleged in paragraph 44 of the first amended complaint." [30]

To each of these interrogatories, plaintiff gave the same answer. It stated:

"Responding Party objects to this interrogatory on the grounds that it seeks premature disclosure of information. Without waiving said objections, Responding party responds as follow:

"The answer to this interrogatory may be derived or ascertained from the business records of the Responding Party or from an examination, audit or inspection of such business records, including a compilation, abstract or summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for the Propounding Party as for the Responding Party. Consequently, pursuant to Federal Rule of Civil Procedure 33, Responding Party will

make its non-privileged business records available for inspection and copying at a mutually agreeable time and upon reasonable notice, at the offices of Gillis Valla & Dalsin, LLP, 3470 Mt. Diablo Boulevard, Suite A–215 and at the office of the Responding Party in Manilla, Phillipines." [31]

■ Rule 33(d) permits "[a] party [to] answer an interrogatory by specifying records from which the answers may be obtained and by making the records available for inspection." *Rainbow Pioneer No. 44–18–04A v. Hawaii–Nevada Inv. Corp.*, 711 F.2d 902, 906 (9th Cir.1983) (citing former Rule 33(c), which is the same as current Rule 33(d), as set forth in FED.R.CIV.PROC. 33, Advisory Committee Notes to 1993 Revisions).[32] A party that elects to avail itself of this option, however, must "specify where in the records the answers [can] be found." *Rainbow Pioneer, supra,* 711 F.2d at 906. In *Rainbow Pioneer,* for example, an interrogatory asked about certain funds a party was alleged to have diverted to itself. The party responded that "the answers could be found 'in partnership books of accounts, banking accounts, records, computer printouts, ledgers and other documents....'" *Id.* The Ninth Circuit held that this "answer" was inadequate as the party failed to specify precisely where in the records the requested information could be found. *Id.* Other courts have reached similar conclusions. See *In re G–I Holdings, Inc.,* 218 F.R.D. 428, 438 (D.N.J.2003) ("The option afforded by Rule 33(d) is not a procedural device for avoiding the duty to give information. The responding party may not avoid answers by imposing on the interrogating party a mass of business records from which the answers cannot be ascertained by

27. *Id.,* Exh. 9.

28. *Id.*

29. *Id.*

30. *Id.*

31. *Id.,* Exh. 10.

32. See also FED.R.CIV.PROC. 33(d) ("Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation,

abstract or summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries. A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained").

a person unfamiliar with them.... Rather, the responding party has a 'duty to specify, by category and location' the records from which he knows the answers to the interrogatories can be found"); *Walt Disney Co. v. DeFabiis,* 168 F.R.D. 281, 284 (C.D.Cal.1996) ("The answers to Interrogatory Nos. 9 and 10 are not in sufficient detail to comply with Rule 33(d). The responses did not specify where in the records the answers could be found" (internal punctuation omitted)); *Pulsecard, Inc. v. Discover Card Servs.,* 168 F.R.D. 295, 305 (D.Kan.1996) ("Under the guise of Fed.R.Civ.P. 33(d) defendants may not simply refer generically to past or future production of documents. They must identify in their answers to the interrogatories *specifically which documents contain the answer.* Otherwise they must completely answer the interrogatories without referring to the documents" (emphasis added)); *Herdlein Technologies, Inc. v. Century Contractors, Inc.,* 147 F.R.D. 103, 105 (W.D.N.C.1993) ("When a party responding to interrogatories chooses to produce its business records in lieu of a conventional response, the responding party must specifically identify the documents from which the responding party may derive an answer. In this case, Herdlein has not responded with the candor and specificity that the rules of discovery require; Herdlein has merely stated the information is available from documents that it has produced already pursuant to an unspecified document request"); *Securities and Exchange Commission v. Bilzerian (In re Bilzerian),* 190 B.R. 964, 965 (Bankr.M.D.Fla.1995) ("The questions basically relate to the Debtor's request that the SEC furnish the following information: (1) the identity of the parties who were the alleged victims of the Debtor's alleged wrong doings; (2) the amount of loss these victims suffered; (3) the facts that would indicate a justifiable reliance of these victims on any alleged misrepresentations, false pretenses, or fraudulent statements made by the Debtor; (4) and the number of complaints the SEC received and the name and addresses of the complaining parties.... In the

present instance, the SEC attempts to furnish the answers requested, with reference to documents furnished in more than twenty-eight boxes, without specifying the particular documents. Even assuming that the documents in the boxes were business records of the SEC, a point not conceded, clearly they were not sufficiently identified to comply with the requirement of Fed.R.Civ.P. 33(d)").[33]

■ Thus, plaintiff's response that the information requested could be found in business records is inadequate under Rule 33(d) because it failed to identify where in the records the answers could be found. Similarly, plaintiff's objection that the interrogatories were "premature" is unavailing. The discovery was propounded almost a year after plaintiff moved to amend its complaint. Surely within that time, if not prior to its filing of the amended pleading, plaintiff must have identified some factual basis for the allegations it was making. Cf. FED.R.CIV. PROC. 11(b)(3) ("By presenting to the court ... a pleading ..., an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery").

■ Neither in its original interrogatory answers, nor in any Rule 26(e) supplement, moreover, did plaintiff identify the facts found in the declaration of Jose S. "Joey" Palma submitted in opposition to the summary judgment motion. Similarly, it did not identify Joey Palma as a witness with knowledge of relevant facts. By its very nature, the testimony Palma now proffers was available to plaintiff at the time it answered the interrogatories defendants propounded, as he is an officer of plaintiff and relates conversations with Roger T. Featherston that took place before this lawsuit was even filed. It

---

**33.** Plaintiff's answers, moreover, are suspect on their face. Defendants sought information regarding the contentions and evidence supporting plaintiff's claim that Roger T. Featherston was

the alter ego of MGA. It is unlikely that such theories and evidence could be found in *plaintiff's* business records.

was not disclosed, however, and under Rule 37(c), plaintiff cannot rely on it now to raise a triable issue of fact defeating summary judgment. See *Pfingston v. Ronan Engineering Co.*, 284 F.3d 999, 1005 (9th Cir.2002) (noting that if a party had been able to show prejudice and/or unfair surprise as a result of his opponent's failure to disclose information pursuant to Rule 26(e)(1), the district court could have properly barred its use at summary judgment); *Klonoski v. Mahlab*, 156 F.3d 255, 268 (1st Cir.1998) (noting that Rule 26(e)(2) "imposes a broad requirement on parties to update their earlier disclosures and discovery responses"); *Imax Corp. v. Cinema Technologies, Inc.*, 152 F.3d 1161, 1167–68 (9th Cir.1998) ("Imax contends that the district court misapplied Fed.R.Civ.P. 26(e) by refusing to consider any trade secret material that was not specifically listed in haec verba in Imax's Fourth Supplemental Responses.... Any confusion on the part of Imax as to the level of specificity required to '[i]dentify the entire content of each and every alleged trade secret' should have been resolved by requesting further clarification of the June 1995 and August 1995 discovery orders. By failing to do so, Imax knowingly incurred the risk that its Fourth Supplemental Responses would not meet the 'reasonable particularity' requirement"); *Orjias v. Stevenson*, 31 F.3d 995, 1005 (10th Cir.1994) ("L–P's response to interrogatory # 36, which asked whether any employee had been disciplined for limiting or failing to limit air emissions at the Olathe plant, was an unqualified 'no.' Though L–P argued that Butler was fired for failure to control his crew on the wafer dryer, not for failing to limit air emissions, this is neither a substantial justification nor a harmless failure under Rule 37(c).... Therefore, the trial court did not abuse its discretion in excluding Byers's testimony").[34]

■ Moreover, although the burden of showing harmlessness or substantial justification rests squarely on plaintiff (see *Yeti by Molly, supra*, 259 F.3d at 1107), defendants have shown prejudice as a result of plaintiff's failure to disclose how it intended to prove that Roger T. Featherston was the alter ego of MGA. Learning of plaintiff's liability theories only after they had filed their motion for summary judgment placed defendants at a distinct disadvantage and constituted unfair surprise. By way of example, plaintiff proffers Palma's declaration, who states that "on one occasion, while in the Phillipines," Roger T. asked for Palma's help in cashing a $30,000 check payable to MGA.[35] Palma states that Roger T. said he "wanted to cash the check in the Philippines so that he could reduce such funds to cash for his personal use."[36] With Palma's assistance, Roger T. took the check to a Citibank branch and cashed it.[37] Palma's declaration leaves many

**34.** In *United States v. Kattar*, 191 F.R.D. 33 (D.N.H.1999), the district court refused to sanction a party for failing to answer an interrogatory, because the party moving for sanctions did not first move under Rule 37(a) for an order compelling a further answer. *Id.* at 35. The case upon which the court relied, however, was a First Circuit case interpreting Rule 37(b), not the mandatory provisions of Rule 37(c). *Id.* (citing *R.W. International Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 15 (1st Cir.1991)). The First Circuit has since noted that the *R.W. International* case has no relevance in determining whether the "automatic and mandatory" sanctions of Rule 37(c) should be imposed. *Ortiz–Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 33 (1st Cir.2001) ("Plaintiffs' argument fails because the district court did not act here under Rule 37(b)(2)(B), the provision at issue in *Welch Foods*. Rule 37(b)(2)(B) does indeed contemplate a threshold determination by the court that the offending party has failed to comply with a court order issued under Rule 37(a). But the same is not true where [the] automatic discovery provisions of Rule 26(a) and 26(e) are violated, triggering subsection (c) of the same Rule 37"). Moreover, *R.W. International* was also decided before the 1993 amendments to Rule 37, which the Ninth Circuit has described as "a recognized broadening of the sanctioning power." *Yeti by Molly, supra*, 259 F.3d at 1106. To the extent the *Kattar* court held that preclusionary sanctions for failure to answer an interrogatory or supplement an interrogatory response are only appropriate where the party seeking such sanctions has first moved for an order compelling further responses, the court declines to follow it, as its reasoning is inconsistent with both the law of this circuit, and the current law of the circuit in which the *Kattar* court sits.

**35.** Palma Decl., ¶ 5.

**36.** *Id.*, ¶ 6.

**37.** *Id.*, ¶¶ 8–10.

questions unanswered. On what date, for example, was the check cashed? What was the "personal use" of which Roger T. spoke? Did Roger T. mention that he viewed the check as a salary payment? Had plaintiff disclosed this alleged conversation during discovery,[38] defendants could have investigated the information, and perhaps deposed Palma. Plaintiff did not, however, and defendants have no way to rebut or explain the evidence at this point. Accordingly, the court excludes all evidence not disclosed to defendants in plaintiff's deficient interrogatory answers or any Rule 26(e) supplement thereto.[39] Given that all of the evidence plaintiff has proffered in opposition to Featherston's motion for summary judgment on the alter ego claim was not previously disclosed, and must therefore be disregarded, plaintiff has failed to discharge its affirmative burden of pointing to "specific facts showing that there is a genuine issue for trial." *Anderson, supra,* 477 U.S. at 250, 106 S.Ct. 2505; FED.R.CIV.PROC. 56(e); see also *Mid–Century Ins. Co. v. Gardner,* 9 Cal.App.4th 1205, 1212, 11 Cal.Rptr.2d 918 (1992) ("It is the plaintiff's burden to overcome the presumption of the separate existence of the corporate entity").

Accordingly, the court grants summary judgment in Roger T. Featherston's favor on plaintiff's alter ego claim. See *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 805–06, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) ("Summary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to her case, and on which she will bear the burden of proof at trial" (internal punctuation omitted).); *Celotex, supra,* 477 U.S. at 332, 106 S.Ct. 2548 (Brennan, J., dissenting) ("*If there is literally no evidence in the record,* the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and

other exchanges between the parties that are in the record. Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party" (emphasis added)); see also *Yeti by Molly, supra,* 259 F.3d at 1106 ("Courts have upheld the use of the [Rule 37's preclusion] sanction even when a litigant's entire cause of action or defense has been precluded"); *Ortiz–Lopez, supra,* 248 F.3d at 35 (although the exclusion of an expert would prevent plaintiff from proving his case and was "a harsh sanction to be sure," it was "nevertheless within the wide latitude of" Rule 37(c)).

### 2. Whether The Undisclosed Evidence Would Defeat Summary Judgment On Plaintiff's Claim That Roger T. Featherston Is The AlterEgo Of MGA

As a second, alternative, and independent ground for granting defendants' motion for summary judgment, the court finds that, even if it did consider the evidence submitted by plaintiff in opposition to defendants' motion, it would still conclude that there is no genuine issue of material fact and that defendants are entitled to judgment as a matter of law. "The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests. In certain circumstances the court will disregard the corporate entity and will hold the individual shareholders liable for the actions of the corporation." *Mesler v. Bragg Management Co.,* 39 Cal.3d 290, 300, 216 Cal.Rptr. 443, 702 P.2d 601 (1985).

The purpose of the doctrine is to bypass the corporate entity to avoid injustice. Its "essence . . . is that justice be done[,] . . . [and t]hus the corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so

---

**38.** The fact-discovery cut-off in this case has long since passed.

**39.** In addition to the Palma declaration, the court also strikes the declaration of David Toy. Toy was not disclosed as a witness pursuant to Rule 26(a), and the information contained in his declaration was not referenced in plaintiff's interrogatory responses or any Rule 26(e) supple-

ment thereof. There is no question that such information was available to plaintiff at the time it responded to defendants' interrogatories in April 2004, as the hearing Toy attended and describes in his declaration took place on May 28, 2003. (See Declaration of David S. Toy ("Toy Decl."), ¶ 3.)

require." *Id.* at 301, 216 Cal.Rptr. 443, 702 P.2d 601. "The terminology 'alter ego' or 'piercing the corporate veil' refers to situations where there has been an abuse of corporate privilege, because of which the equitable owner of a corporation will be held liable for the actions of the corporation." *Roman Catholic Archbishop of San Francisco v. Superior Court,* 15 Cal.App.3d 405, 411, 93 Cal. Rptr. 338 (1971) (citing *Minton v. Cavaney,* 56 Cal.2d 576, 579, 15 Cal.Rptr. 641, 364 P.2d 473 (1961)). "Because society recognizes the benefits of allowing persons and organizations to limit their business risks through incorporation, sound public policy dictates that imposition of alter ego liability be approached with caution." *Las Palmas Associates v. Las Palmas Center Associates,* 235 Cal.App.3d 1220, 1249, 1 Cal.Rptr.2d 301 (1991).

Before the doctrine may be invoked, two elements must be established: " '(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow.' " *Mesler, supra,* 39 Cal.3d at 300, 216 Cal.Rptr. 443, 702 P.2d 601 (quoting *Automotriz Del Golfo De California S.A. De C.V. v. Resnick,* 47 Cal.2d 792, 796, 306 P.2d 1 (1957)); see also *AT & T v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 591 (9th Cir.1996). "Among the factors to be considered in applying the doctrine are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." *Roman Catholic Archbishop, supra,* 15 Cal.App.3d at 411, 93 Cal.Rptr. 338 (citing *Associated Vendors, Inc. v. Oakland Meat Co.,* 210 Cal.App.2d 825, 837, 26 Cal. Rptr. 806 (1962)).

### a. Element 1: Unity of Interest

As noted above, to defeat summary judgment, plaintiff must tender sufficient evidence from which a rational jury could conclude that there exists such a "unity of interest and ownership [between Roger T. and MGA] that the separate personalities of the corporation and the individual no longer exist." *Mesler, supra,* 39 Cal.3d at 300, 216 Cal.Rptr. 443, 702 P.2d 601. In *Associated Vendors, Inc. v. Oakland Meat Co.,* 210 Cal. App.2d 825, 26 Cal.Rptr. 806 (1962), summarized the factors relevant to this determination:

> "Commingling of funds and other assets, failure to segregate funds ... and the unauthorized diversion of corporate funds or assets to other than corporate uses; the treatment by an individual of the assets of the corporation as his own; ... the failure to maintain minutes or adequate corporate records ...; ... sole ownership of all of the stock in a corporation by one individual or the members of a family; ... the failure to adequately capitalize a corporation; the total absence of corporate assets and undercapitalization; the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation; the ... concealment of personal business activities; ... the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors ...; [and] contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability ...." *Id.* at 838–40, 26 Cal.Rptr. 806 (internal citations omitted).

Some of these factors are less important than others. In particular, "courts have cautioned against relying too heavily in isolation on the factors of inadequate capitalization or concentration of ownership and control." *Mid–Century Ins. Co., supra,* 9 Cal.App.4th at 1213, 11 Cal.Rptr.2d 918 (citing *Arnold v. Browne,* 27 Cal.App.3d 386, 394, 103 Cal. Rptr. 775 (1972)); but cf. *Slottow v. American Cas. Co. of Reading, Pennsylvania,* 10 F.3d 1355, 1360 (9th Cir.1993) ("[U]nder California law, inadequate capitalization of a subsidiary may alone be a basis for holding the parent corporation liable for the acts of the subsidiary").

In support of its contention that Roger T. Featherston is the alter ego of

MGA, plaintiff proffers several pieces of evidence. First, plaintiff contends it is "clear" that MGA's corporate records were not properly maintained. Plaintiff proffers *no* evidence in support of this contention, however. Rather, it asserts in its brief that Rosalind De'Prey, MGA's bookkeeper, testified at her deposition that she could not remember *where* the corporate records were kept. As an initial matter, De'Prey's deposition is not of record; thus, plaintiff's reliance on it is improper. See, e.g., *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1240, n. 7 (11th Cir.2003) (". . . we have carefully reviewed the entire record before us, and it appears that McCormick never offered his deposition to the district court in opposition to summary judgment. Because the deposition of McCormick is no part of the evidentiary record of the case, we give McCormick's passing references to the deposition no consideration"); *Hinds v. Slagel,* No. Civ.A. 300CV2372D, 2002 WL 1398557, * 2 (N.D.Tex. June 26, 2002) ("When a party does not refer to items in the record, his evidence is not properly before the court for purposes of deciding the summary judgment motion"); *Young v. Sprint Spectrum, L.P.,* No. 00–3523, 2001 WL 1543873, * 1, n. 2 (E.D.La. Dec. 3, 2001) ("Plaintiffs refer to testimony of Dawn Brown who states that her father was diagnosed with a brain tumor since construction of the monopole and other deposition testimony that the plaintiff who live[s] nearest the cell cite reports a constant humming sound. However, this testimony is not a part of the summary judgment record that is before the Court"). Even if it were properly before the court, however, De'Prey's purported testimony would not raise a triable issue of fact regarding Roger T.'s alter ego liability. The fact that a corporate bookkeeper does not know where corporate records are kept does not mean that the records did not, or do not, exist.

Plaintiff also argues that there is disputed factual issue as to whether MGA kept proper corporate records because "in Defendants' laundry list of properly maintained documents set forth in the Motion for Summary Judgment, there is no indication of the existence of a minute book, shareholder or director resolutions or meeting minutes." [40] This statement reflects a misunderstanding of the parties' respective burdens on a motion for summary judgment, and of the burden of proof in this case. It is plaintiff who bears the burden of proof on the unity of interest issue. See *Mid–Century Ins. Co., supra,* 9 Cal.App.4th at 1212, 11 Cal.Rptr.2d 918. It is thus plaintiff's burden to show that there are triable issues of fact respecting the issue at the summary judgment stage. See *Celotex Corp., supra,* 477 U.S. at 323, 106 S.Ct. 2548. Defendants need not offer facts that *disprove* that MGA did not follow corporate formalities. Rather, plaintiff must offer admissible evidence that tends to prove the company ignored formalities. Plaintiff has offered no admissible evidence in this regard.

Plaintiff next contends that Roger T. "siphoned off" assets from MGA. As evidence of this, plaintiff proffers a number of documents, which are disorganized and presented in no particular order. Exhibit B to the declaration of attorney Steven J. Willock, for example, is a random compilation of receipts from various business establishments, as well as expense reports, income statements, and cash flow reports for MGA. Willock asserts that they were procured during a document review conducted in connection with the MGA bankruptcy proceeding, and states that they "appear to" reflect "expenses [for] which MGA reimbursed . . . Roger T. Featherston. . . ." [41] It is clear from a review of Willock's declaration that he has no personal knowledge regarding the documents, and that he cannot authenticate them. See FED. R.EVID. 901; *Orr v. Bank of America,* 285 F.3d 764, 777 (9th Cir.2002) ("Mirch's affidavit does not lay a foundation for Exhibit C. Mirch neither wrote the memo nor witnessed Geerhart do so, and he is not familiar with Geerhart's signature"). Similarly, the fact that the documents were produced during a document review related to MGA's bankruptcy proceeding does not suffice to authenticate

---

**40.** Pl.'s Opp. at 9:8–11.

**41.** Declaration of Steven J. Willock ("Willock Decl."), ¶¶ 5–6.

them for purposes of defendants' summary judgment motion. Willock does not state the nature of the document review (e.g., whether it was court-ordered or in response to a document production request), nor does he identify specifically the producing party. Roger T., the party against whom they are offered, moreover, is not a party to the bankruptcy proceeding, and has not admitted the authenticity of the documents.[42] See *id.* at 777 ("Exhibit C is not authenticated by having been produced in discovery in the [related] Bourdeau action. Orr has not identified who produced it, and neither Geerhart nor the NDFI have admitted to producing the memo. Further, neither Geerhart nor the NDFI is a party in Orr's action against BOA. Exhibit C is therefore inadmissible").

Even if the documents were admissible, however, they would not create a triable issue of fact defeating summary judgment. Without additional evidence demonstrating the circumstances under which MGA paid the expenses referenced in the documents, they do not evidence "siphoning off." Corporations frequently reimburse their presidents for travel and automobile expenses. See, e.g., *Mid–Century Ins. Co., supra,* 9 Cal. App.4th at 1215, 11 Cal.Rptr.2d 918 (reversing the trial court's piercing of the corporate veil because "[t]he plaintiff has a gaping lacuna in its proof with respect to any evidence that Mr. Gardner generally treated corporate assets as his own or disregarded the separate nature of the business. . . . [W]e are simply presented with the fairly common circumstance of a corporation providing its executive officer with the perquisite of vehicles for his personal use and the concomitant insurance. . . . No rational inference of subterfuge may be drawn from this"). Plaintiff has adduced no evidence that the expenses reflected on the receipts attached to the Willock declaration were other than ordinary business expenses of the corporation.[43] See

*Teamsters Health and Welfare Fund of Philadelphia and Vicinity v. World Transportation, Inc.,* 241 F.Supp.2d 499, 504 (E.D.Pa. 2003) ("Plaintiffs claim that Trans Freight made substantial charitable donations while undergoing financial problems. As a result, Rueda, Plaintiffs argue, received 'a certain social, personal benefit.' . . . We find that these charitable donations were not siphoned for personal benefit but rather, they were legitimate business expenses, which served advertising and business generating purposes"); *id.* ("Plaintiffs question Rueda's use of a company boat, but fail to present evidence that it was bought, maintained, or used for personal benefit").

Moreover, there is undisputed evidence in the record that Roger T. deferred his compensation and loaned the corporation $100,000. This type of activity is inconsistent with an alter ego finding. See *Carpenters Health and Welfare Fund v. Kenneth R. Ambrose, Inc.,* 727 F.2d 279, 284 (3d Cir. 1983) (reversing a district court alter ego finding because defendants acted as "good samaritans" by mortgaging their home in an attempt to keep the corporation solvent); *Teamsters Health and Welfare Fund of Philadelphia and Vicinity v. World Transportation, Inc.,* 241 F.Supp.2d 499, 504 ("Defendant Rueda contends that rather than siphoning funds, he infused funds into the corporation with loans that were unlikely to be repaid. It appears to this Court that this case is in line with one in which the defendant, 'in loaning the corporation large sums of money, acted like a good samaritan for the survival of the corporation,'" citing *Carpenters Health*). In sum, plaintiff has failed to raise a triable issue of fact regarding its allegation that Roger T. was "siphoning off" MGA's assets. This assertion, therefore, provides no basis for denying defendants' motion for summary judgment.

---

**42.** See Defendants' Objections to the Declarations of David S. Toy, Jose S. Palma, and Steven J. Willock ("Defs.' Obj.") at 6:9–7:8.

**43.** One handwritten document appears to concern limousine services provided on Roger T.'s birthday. Plaintiff appears to assume that the receipt reflects Roger T.'s use of a limousine on his birthday. (See Pl.'s Opp. at 11:6–7.) As

defendants note, the receipt could just as easily reflect limousine service for MGA customers attending a birthday party/business dinner honoring Roger T. (See Defs.' Obj. at 6:15–16.) Absent additional evidence regarding the nature of the expenditure, the court cannot accept plaintiff's characterization as the proper one.

Third, plaintiff points to the fact that, on one occasion, Roger T. cashed a $30,000 corporate check in the Phillippines, and purportedly told Joey Palma it was for "personal use." [44] Assuming the truth of Palma's statement, it is so lacking in detail that it cannot raise a triable issue of fact as to whether there was a such "unity of interest and ownership [between Roger T. and MGA] that the separate personalities of the corporation and the individual no longer exist." *Mesler, supra,* 39 Cal.3d at 300, 216 Cal.Rptr. 443, 702 P.2d 601. Rather, drawing all reasonable inferences in favor of plaintiff, the evidence shows that *on one occasion,* Roger T. may have taken money from the corporation for personal use. Without evidence that Roger T. was not entitled to the money—e.g., that it was not part of his compensation or a legitimate dividend—his use of the money does not raise triable issues of fact warranting a trial. Stated otherwise, because piercing the corporate veil must be approached with caution, a court should not presume, in the absence of contrary evidence, that corporate officers are improperly discharging their duties. *Mesler, supra,* 39 Cal.3d at 306, 216 Cal.Rptr. 443, 702 P.2d 601 (Lucas, J., dissenting) ("As an exception to the usual insulation from liability which incorporation provides to its shareholders, care is required before 'alter ego' is found applicable"); *Las Palmas Associates, supra,* 235 Cal.App.3d at 1249, 1 Cal.Rptr.2d 301 ("Because society recognizes the benefits of allowing persons and organizations to limit their business risks through incorporation, sound public policy dictates that imposition of alter ego liability be approached with caution").

In any event, the fact that a company president has taken money from the corporation for personal use on one occasion is not sufficient to discharge plaintiff's burden of coming forward with evidence of "treatment by [Roger T.] of the assets of the corporation as his own." *Associated Vendors, supra,* 210 Cal.App.2d at 838, 26 Cal.Rptr. 806; see *Kaplan v. First Options of Chicago, Inc.,* 19 F.3d 1503, 1523 (3d Cir.1994) ("This record does not show that MKI was a 'sham' either pre- or post-workout. Instead, it shows that Mr. Kaplan had run a successful business venture until the crash. From it, before and after the crash, he had sometimes withdrawn funds for personal use without observing corporate formalities. With the exception noted, none of these withdrawals appear to have affected MKI's solvency or to have been made when it was insolvent. This record does not clearly and convincingly show that MKI was a sham Mr. Kaplan manipulated in fraud of its creditors"); *William Wrigley, Jr. Co. v. Waters,* 890 F.2d 594, 601 (2d Cir.1989) (piercing the corporate veil is justified when there is proof of an abuse of the corporate form "either through *on-going* fraudulent activities of a principal, or a *pronounced and intimate* commingling of the corporation and its principal or principals, which prompted the reviewing courts, driven by equity, to disregard the corporate form" (emphasis added)); *Dean v. United States,* 987 F.Supp. 1160, 1165 (W.D.Mo.1997) ("It is true that [the trustees] both drive cars owned by the trust for their personal use and Catherine Mossie lives in the family home. But these facts alone are insufficient to characterize the trust as the alter ego of the taxpayers. A beneficiary of the trust could sue the trustees for failing to comply with a term of the trust, but small deviations from the trust are not enough to invalidate the whole trust"). The fact that Roger T. controlled the corporation, and was its sole shareholder, adds little of evidentiary value to the analysis. See *Mid–Century Insurance, supra,* 9 Cal.App.4th at 1215, 11 Cal.Rptr.2d 918 ("About the only factor to which the plaintiff can point is Mr. Gardner's domination of ownership and control, but we have already pointed out this factor is not significant in isolation"); *MacPherson, supra,* 190 Cal.App.2d at 27, 11 Cal.Rptr. 671 ("Here the only uncontradicted fact bearing upon the alter ego theory is that Eccleston owned substantially all the stock of El Dorado. This fact, standing alone, is not enough to require disregard of the separate corporate entity"). Accordingly, even if it could properly be considered under Rule 37(c), the evidence plaintiff adduces that Roger T. made personal use of corporate

---

44. Palma Decl., ¶ 6.

funds would not raise a triable issue of fact defeating summary judgment.

 Finally, plaintiff contends that MGA was "undercapitalized." The only evidence of this is found in attorney David Toy's declaration. Toy states that he questioned Roger T. Featherston at a meeting of creditors held in United States Bankruptcy Court in connection with MGA's bankruptcy proceeding.[45] Toy asserts that, when questioned about MGA's financial situation, Roger T. "declared unequivocally and repeatedly that 'MGA has always been undercapitalized.' "[46] He further states that, when his office obtained an audiotape of the hearing, "the tapes provided to my office were incomplete in that they did not contain that portion of the 341(a) Hearing during which" this testimony occurred.[47] Even crediting Toy's statement,[48] it does not raise triable issues of fact as to whether the corporate veil should be pierced. As noted, "courts have cautioned against relying too heavily in isolation on the factors of inadequate capitalization or concentration of ownership and control." *Mid–Century Ins. Co., supra,* 9 Cal.App.4th at 1213, 11 Cal.Rptr.2d 918; *Arnold v. Browne,* 27 Cal.App.3d 386, 396, 103 Cal.Rptr. 775 (1972) ("In almost every instance where the trial court has found inadequate capitalization, there are other factors present" supporting invocation of the alter ego doctrine).

Accordingly, even if it were to consider plaintiff's undisclosed evidence and legal theories, the court would find that plaintiff had not come forward with sufficient evidence to submit its alter ego claim against Roger T. Featherston to a jury.

### b. Inequitable Result

 Even if plaintiff had adduced sufficient evidence to raise triable issues of fact regarding the unity of interest prong of the alter ego test, it has not adduced specific facts tending to show that "if the acts are treated as those of the corporation alone, an inequitable result will follow." *Mesler, supra,* 39 Cal.3d at 300, 216 Cal.Rptr. 443, 702 P.2d 601; see also *Doney v. TRW, Inc.,* 33 Cal.App.4th 245, 249, 39 Cal.Rptr.2d 292 (1995) ("The alter ego doctrine will only be applied to avoid an inequitable result"); *Shapoff v. Scull,* 222 Cal.App.3d 1457, 1471, 272 Cal.Rptr. 480 (1990) ("Thus it is plain that contrary to the defendants' argument on appeal, abuse of the corporate privilege by itself does not require that a court disregard the separate identity of a corporation. There must be some equitable purpose which will be served by ignoring the corporate form").

Plaintiff has not proffered any evidence tending to show that an "inequitable result" will follow if the court's declines to disregard MGA's corporate form. Rather, plaintiff has shown nothing other than that failure to pierce the corporate veil will force it to seek repayment of MGA's outstanding debts in the company's bankruptcy proceeding, with the consequence that it may not be able to recover the full extent of the monies owed.[49] Although unfortunate, this is not an inequitable result. Rather, it is a risk that is a normal incident of doing business.[50] As the

---

**45.** Toy Decl., ¶¶ 4–5. As noted above, Toy was not disclosed as a witness pursuant to Rule 26, and his testimony regarding Featherston's alleged bankruptcy testimony was not disclosed in answers to interrogatories or supplements thereto. As a consequence, Toy's declaration must be stricken.

**46.** *Id.,* ¶ 6.

**47.** *Id.,* ¶ 8.

**48.** It is debatable whether the court is required to accept this testimony. "Judges ... are not wallflowers or potted plants," and a district court is not required to accept testimony that is clearly incredible or unreliable. *Tagatz v. Marquette University,* 861 F.2d 1040, 1045 (7th Cir. 1988) (Posner, J.).

**49.** *Id.* at 8:11–17.

**50.** Courts are less likely to apply the alter ego doctrine where the party seeking to invoke it, such as Cambridge here, voluntarily transacted business with the corporate entity. See, e.g., *Energy & Metals Corp. v. Banks,* 896 F.2d 1557, 1577 (10th Cir.1990) ("[T]he analysis of corporate veil issues is different in a consensual transaction, such as a breach of contract case, than in a nonconsensual transaction, such as many tort cases.... The obvious difference between consensual and nonconsensual transactions is that the claimants in consensual transactions generally have chosen the parties with whom they have dealt and have some ability, through personal guarantees, security agreements, or similar mechanisms, to protect themselves from loss"); *Edwards Co. v. Monogram Industries, Inc.,* 730

Ninth Circuit has noted, "[c]reditors ... are always subject to the risk that debtors will file for bankruptcy." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs)*, 339 F.3d 782, 791 (9th Cir.2003). Moreover, California courts have rejected the view that the potential difficulty a plaintiff faces collecting a judgment is an inequitable result that warrants application of the alter ego doctrine. See *Virtualmagic Asia, Inc. v. Fil–Cartoons, Inc.*, 99 Cal.App.4th 228, 245, 121 Cal.Rptr.2d 1 (2002) ("[A]lter ego will not be applied absent evidence that an injustice would result from the recognition of separate corporate identities, and '[d]ifficulty in enforcing a judgment or collecting a debt does not satisfy this standard,'" quoting *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 539, 99 Cal.Rptr.2d 824 (2000)); *Mid–Century Ins. Co.*, *supra*, 9 Cal.App.4th at 1213, 11 Cal.Rptr.2d 918 ("'Certainly, it is not sufficient to merely show that a creditor will remain unsatisfied if the corporate veil is not pierced, and thus set up such an unhappy circumstance as proof of an "inequitable result. In almost every instance where a plaintiff has attempted to invoke the doctrine he is an unsatisfied creditor,"'" quoting *Associated Vendors, supra*, 210 Cal.App.2d at 842, 26 Cal.Rptr. 806).

Rather, California courts generally require some evidence of bad faith conduct on the part of defendants before concluding that an inequitable result justifies an alter ego finding. *Mid–Century Ins. Co.*, *supra*, 9 Cal.App.4th at 1213, 11 Cal.Rptr.2d 918 ("'The purpose of the doctrine is not to protect every unsatisfied creditor, but rather to afford him protection, where some conduct amounting to bad faith makes it inequitable,

under the applicable rule above cited, for the equitable owner of a corporation to hide behind its corporate veil,'" quoting *Associated Vendors, supra*, 210 Cal.App.2d at 842, 26 Cal.Rptr. 806). Plaintiff has not adduced any such evidence. Thus, defendants' motion for summary judgment on the alter ego claim must be granted for this independent reason as well. See *Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F.Supp.2d 1060, 1070 (C.D.Cal.2002) ("Wady has not asserted that inequitable results will follow if the corporate wall between Provident and UnumProvident is maintained, much less submitted evidence to that effect.... The Court thus concludes that no genuine issue of material fact exists to support Wady's alter ego argument, and that UnumProvident is entitled to judgment as a matter of law").

## C. Fraudulent Transfer

▮ Plaintiff's fraudulent transfer claim is asserted against defendants Roger T. Featherston, Roger A. Featherston, MGA Midwest, RTF Associates, LLC, and Chandler Lake Elizabeth Development Group, LLC.[51] In their motion for summary judgment, defendants stated that "neither RTF, Chandler, nor Midwest received any assets at any time" from MGA.[52] Defendants also assert more generally that "RTF, Chandler, and Midwest had nothing whatsoever to do with MGA's business...."[53] Under the law governing motions for summary judgment, as articulated by the Supreme Court in *Celotex*, if a party moving for summary judgment does not bear the burden of proof at trial on a claim, it need only "inform[ ] the district court of the basis for its motion." *Celotex, supra*, 477 U.S. at 323, 106 S.Ct. 2548 (stating that the moving party need not "support

F.2d 977, 981 (5th Cir.1984) (en banc) ("The attempt to hold a parent corporation where the claim asserted is of contractual origin presents added difficulties. The very reasonable question must be met and answered why one who contracted with the subsidiary and received the promise which he bargained for but who has been disappointed in the fulfillment by the subsidiary of its commitment should be allowed to look to the parent. As a matter of contract right it is evident he may not. Additional compelling facts must appear" (internal quotations and citation omitted)); F. Easterbrook & D. Fischel, Limited Liability and the Corporation, 52 U. CHI. L.

REV. 89, 112 (1985) (explaining that courts are more willing to pierce the corporate veil in tort than in contract cases because contract creditors, unlike tort creditors, are compensated *ex ante* for the increased risk of default *ex post*).

**51.** First Amended Complaint, ¶ 63.

**52.** Defendants' Motion for Summary Judgment ("Defs.' Mot.") at 16:27.

**53.** Defs.' Mot. at 1:23–24.

its motion with affidavits or other similar materials negating the opponent's claim," that it may simply "inform[ ] the district court of the basis for its motion"). It may do this by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548; see also *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000) (holding that the *Celotex* "showing" can be made by "pointing out through argument—the absence of evidence to support plaintiff's claim"). This is precisely what RTF, MGA Midwest, and Chandler Lake did in their opening brief. The burden thus shifted to plaintiff to come forward with "specific facts showing that there is a genuine issue for trial." *Id.* at 250, 106 S.Ct. 2548; FED.R.CIV.PROC. 56(c).

In its opposition, plaintiff did not respond to defendants' argument that there was no evidence of transfers, fraudulent or otherwise, by MGA to RTF, MGA Midwest, and Chandler Lake. Nor did it proffer evidence that these entities received transfers. Thus, RTF, MGA Midwest, and Chandler Lake are entitled to have summary judgment entered in their favor on plaintiff's fraudulent transfer claim. See *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1107 (9th Cir.2000) (holding that once the moving party carries its initial burden of production, "the nonmoving parties were obligated to produce evidence in response"); *Shwarz v. United States,* 234 F.3d 428, 436 (9th Cir.2000) ("Appellees carried their initial burden by pointing to a lack of evidence supporting Appellants' *Bivens* claim. Appellants produced no affidavits or other evidence in response. The district court's ruling on the summary judgment motion was therefore correct"); cf. *Forsberg v. Pacific Northwest Bell Telephone Co.,* 840 F.2d 1409, 1418 (9th Cir.1988) ("The district judge is not required to comb the record to find some reason to deny a motion for summary judgment"). The balance of this section, therefore, focuses only on the claims against Roger A. and Roger T.

### 1. Whether Plaintiff Can Offer Evidence Or Legal Theories Not Disclosed In Its Interrogatory Responses

As discussed, Rule 26(e)(2) requires parties "seasonably" to supplement their interrogatory responses under Rule 33 if the responses are either incomplete or incorrect. FED.R.CIV.PROC. 26(e)(2). Rule 37(c) requires that the court preclude a party from introducing evidence or theories not disclosed pursuant to Rule 26(e), unless it can show that its violation of Rule 26 was either harmless or substantially justified. FED. R.CIV.PROC. 37(c)(1); *Yeti by Molly, supra,* 259 F.3d at 1106.

On March 10, 2004, defendants propounded interrogatories to plaintiff. Interrogatories Nos. 13 and 14 addressed the fraudulent transfer claim, and sought information regarding the basis for it. Specifically, Interrogatory No. 13 stated:

> "Describe and itemize each asset 'owned by, or in possession or control of MGA' that was transferred to Roger T. Featherston so that 'MGA did not receive equivalent value in exchange for the assets transferred,' as alleged in paragraph 58 of the first amended complaint." [54]

Similarly, Interrogatory No. 14 stated:

> "Describe and itemize each asset 'owned by, or in possession or control of MGA' that was transferred to Roger A. Featherston so that 'MGA did not receive equivalent value in exchange for the assets transferred,' as alleged in paragraph 58 of the first amended complaint." [55]

To both interrogatories, plaintiff responded as follows:

> "Responding Party objects to this interrogatory on the grounds that it seeks premature disclosure of information. Without waiving said objections, Responding party responds as follow:
>
> "The answer to this interrogatory may be derived or ascertained from the business records of the Responding Party or from an examination, audit or inspection of such business records, including a compilation, abstract or summary thereof, and the bur-

---

54. Nicholson Decl., Exh. 9.

55. *Id.*

den of deriving or ascertaining the answer is substantially the same for the Propounding Party as for the Responding Party. Consequently, pursuant to Federal Rule of Civil Procedure 33, Responding Party will make its non-privileged business records available for inspection and copying at a mutually agreeable time and upon reasonable notice, at the offices of Gillis Valla & Dalsin, LLP, 3470 Mt. Diablo Boulevard, Suite A–215 and at the office of the Responding Party in Manilla, Phillipines.

"In addition, discovery is continuing. Responding party reserves the right to amend and supplement its response upon discovery of information responsive to this interrogatory." [56]

As noted earlier, Rule 33(d) requires that a responding party that wishes to rely on records "specify where in the records the answers [to the interrogatories can] be found." *Rainbow Pioneer, supra,* 711 F.2d at 906; *Walt Disney Co., supra,* 168 F.R.D. at 284. Plaintiff's interrogatory responses did not satisfy this requirement, and were therefore inadequate.

■ Even had plaintiff's general reference to business records been proper under Rule 33(d), moreover, all of plaintiff's evidence in support of its fraudulent transfer claim comes is found in Palma's declaration. It is incontrovertible that plaintiff could have disclosed its theory, and the evidence Palma now adduces, in its interrogatory responses. It failed to do so, however. The preclusion sanction set forth in Rule 37(c)(1) is "automatic and mandatory" unless plaintiff can show harmlessness or substantial justification. See *Yeti by Molly, supra,* 259 F.3d at 1107; *Telluride Management Solutions v. Telluride Investment Group,* 55 F.3d 463, 466, n. 2 (9th Cir.1995). Because Palma is one of plaintiff's officers, plaintiff could easily have discovered the evidence it now adduces had it conducted a thorough investigation prior to answering defendants' interrogatories. Perhaps for this reason, plaintiff makes no argument that its failure to disclose was substantially justified or that it was harmless. The court, accordingly, precludes plaintiff from relying on any evidence offered in support of the fraudulent transfer claim that was not disclosed in its interrogatory responses. As plaintiff has offered no evidence of this type that raises a triable issue of fact regarding the fact that fraudulent transfers were made, the court must grant summary judgment in defendants' favor on that claim. See *Celotex, supra,* 477 U.S. at 324, 106 S.Ct. 2548 ("Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial' "); see also *Yeti by Molly, supra,* 259 F.3d at 1106 ("Courts have upheld the use of the [Rule 37's preclusion] sanction even when a litigant's entire cause of action or defense has been precluded"); *Ortiz–Lopez, supra,* 248 F.3d at 35 (although the exclusion of an expert would prevent plaintiff from proving his case and was "a harsh sanction to be sure," it was "nevertheless within the wide latitude of" Rule 37(c)).

## 2. Whether Plaintiff Has Raised A Triable Issue of Fact as to Whether MGA Made a Fraudulent Transfer to Roger A. Featherston

■ As a second, alternative, and independent ground upon which to grant summary judgment on the fraudulent transfer claim, the court finds that, even if it were to consider the Palma declaration, it would not create an issue of fact defeating summary judgment. Plaintiff argues that a $248,410.45 payment MGA made to Roger A. sometime after November 12, 2002, constitutes a fraudulent transfer under the California Uniform Fraudulent Transfer Act, CAL. CIV. CODE §§ 3439 et seq. Roger A. has submitted a declaration, with accompanying exhibits, which explains the circumstances surrounding the transfer. Roger A. states that, in late 2001 or early 2002, Roger T. asked him to loan MGA a substantial amount of money. Roger A. eventually agreed to loan MGA as much as $500,000.[57] The loan was funded in three installments—$250,000

---

**56.** *Id.,* Exh. 10.

**57.** RAF Decl., ¶ 3.

on February 26, 2002, $116,000 on March 25, 2002, and $134,000 on April 10, 2002.[58] Commencing in or around May 2002, MGA began to make monthly payments on the loan. In October 2002, MGA failed to make a payment.[59] Accordingly, Roger A. exercised his option under the loan documents [60] to accelerate the entire balance of the loan, and sent the corporation a notice of default on November 12, 2002.[61]

Following this demand, MGA eventually paid Roger A. $248,410.45.[62] More than $250,000 of the loan balance remains outstanding.[63] Defendants argue that this payment could not have been a fraudulent transfer as MGA received reasonably equivalent value—dollar-for-dollar debt reduction. See CAL. CIV. CODE § 3439.04 ("A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows ... [w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation..."); *In re United Energy Corp.*, 944 F.2d 589, 595 (9th Cir. 1991) ("[W]e conclude the BAP properly reversed the bankruptcy courts on the basis that the investors exchanged reasonably equivalent value when their rights to restitution were proportionately reduced by the power payments they received"); *Austin v. Chisick (In re First Alliance Mortg. Co.)*, 298 B.R. 652, 665 (C.D.Cal.2003) ("Repayments of fully secured obligations—where a transfer results in a dollar for dollar reduction in

the debtor's liability—do not hinder, delay or defraud creditors [under CAL. CIV. CODE § 3439.04] because the transfers do not put assets otherwise available in a bankruptcy distribution out of their reach, do not result in a diminution of the debtor's estate, and therefore cannot be fraudulent"); *Marshack v. Wells Fargo Bank (In re Walters)*, 163 B.R. 575, 581 (Bankr.C.D.Cal.1994) ("A proportionate reduction in rights or liability constitutes an exchange of reasonably equivalent value for fraudulent transfer purposes under the Bankruptcy Code or California state law").

Cambridge argues, however, that it has raised a triable issue of fact as to whether MGA did, in fact, receive a proportionate reduction in its debt to Roger A. as a result of the $248,410.45 payment. The only evidence plaintiff proffers in support of this argument is the following sentence in the declaration of Joey Palma:

"In approximately August or September 2002, Mr. [Roger T.] Featherston informed me that all outstanding MGA debts owed to his father, Roger A. Featherston, had been converted to equity in MGA." [64]

The inference plaintiff asks the court to draw from this statement is that Roger A. had already been compensated for the $500,000 he loaned MGA by having his contribution converted to equity in the corporation. Accordingly, plaintiff asserts, the $248.410.45 payment could not have been for reasonably equivalent value. As an initial matter, the court notes that this theory is directly con-

---

58. *Id.* Also attached to Roger A.'s declaration are documents evidencing these transactions. *Id.*, Exhs. 1–5.

59. *Id.*, ¶ 4.

60. *Id.*, Exh. 1 ("Secured Promissory Note"), § 3.a ("The whole sum of unpaid principal hereunder, together with any other amounts payable hereunder, shall become due at the option of Holder, upon written notice to Borrower ... [i]f Borrower shall fail to make any payment due hereunder within ten (10) days after its scheduled due date...").

61. *Id.*, ¶ 4 & Exh. 6.

62. *Id.*, ¶ 5.

63. *Id.*

64. Palma Decl., ¶ 11. The lack of detail provided by Palma merely reinforces the court's alternative holding that summary judgment is appropriate because plaintiff failed to identify Palma's evidence in its responses to defendants' interrogatories regarding the fraudulent transfer claim. Had this evidence been disclosed to defendants, *as required by the Federal Rules of Civil Procedure*, defendants would have been able to depose Palma, and to obtain information regarding the circumstances under which, and the context in which, the statement was purportedly made. The current record, by contrast, contains no detail regarding the conversation, and no explanation regarding the type of "equity" Roger T. referenced in his comment.

trary to the position taken by plaintiff in arguing that the court should pierce the corporate veil, and find that Roger T. is the alter ego of MGA. In support of its alter ego claim, plaintiff repeatedly asserts that the court should disregard the corporate form because Roger T. "was the President, *sole shareholder,* and the sole director of defendant MGA." [65] The court doubts that plaintiff can argue one set of facts to defeat summary judgment on one claim, and argue an inconsistent set of facts to defeat summary judgment on another claim. Cf. *Fallar v. Compuware Corp.,* 202 F.Supp.2d 1067, 1078 (D.Ariz.2002) ("[A] party cannot avoid summary judgment by creating a sham issue of fact—one that directly contradicts prior testimony."). Even if it could, however, Palma's statement is insufficient to create a genuine issue of fact.

▮▮▮▮ First, it appears that Palma's statement is classic hearsay, and thus is inadmissible. Palma reports a statement allegedly made by Roger T., and offers it to prove the truth of the matter asserted in the statement. See FED.R.EVID. 801(c) (" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). Although Roger T. is a party to this action, and the statement would therefore be a non-hearsay admission under Rule 801(d)(2) if offered against him, plaintiff offers the statement against Roger A. It is well-established that under Rule 801(d)(2), "a party's statement is admissible as non-hearsay only if it is offered against *that* party." *Stalbosky v. Belew,* 205 F.3d 890, 894 (6th Cir.2000) (emphasis added); see also *id.* ("The district court disregarded this testimony as hearsay. On appeal, Stalbosky argues that Blakeley's statement was admissible under Rule 801(d)(2) of the Federal Rules of Evidence as an admission by Belew, a party-opponent. Belew is a party to this action, but the statements that are at issue here were not offered against Belew, but

rather against Three Rivers to establish its knowledge of Belew's prior criminal history"); *United States v. Eubanks,* 591 F.2d 513, 519 (9th Cir.1979) ("Admissions by individual defendants could not be considered as evidence against the other defendants"); *Western Wholesale Supply, Inc. v. Holladay,* No. Civ. 97–0297–S–BLW, 2000 WL 33716996, *4, n. 2 (D.Idaho 2000) ("Foreman's testimony is not hearsay under Rule of Evidence 801(d)(2)(D). Foreman is clearly an agent or servant of Wayne–Dalton testifying to a matter within his employment and responsibility. The statement may therefore be admitted against Wayne–Dalton, *although it cannot be admitted against any other party*" (emphasis added)). Palma's statement, moreover, does not appear to fall within any of the exceptions to the hearsay rule. Because only admissible evidence may be considered in ruling on a motion for summary judgment (see FED.R.CIV.PROC. 56(e)), the court cannot consider Palma's report of Roger T.'s statement.[66]

▮▮▮▮ Second, even if the court were to consider Palma's statement, all it tends to prove is that Roger T. *said* Roger A.'s loans had been converted to "equity" in MGA. Plaintiff adduces no evidence that this is the case. Plaintiff has had ample opportunity to conduct discovery, and has failed to produce any evidence—e.g., stock certificates or corporate books and records—that shows MGA actually converted Roger A.'s loan to equity. Moreover, Palma provides no details regarding the circumstances surrounding the statement. Without such details, the statement is not sufficiently definite to raise a triable issue of fact defeating summary judgment. *Lewis v. Bank of Am. NA,* 343 F.3d 540, 546 (5th Cir.2003) ("Lewis provided no further details about the context of the exchange or the specific nature of Thomason's 'assurance.' Because Lewis's testimony omitted critical details such as the specific nature of both his inquiry and Thomason's response, it is not

---

**65.** Pl.'s Opp. at 8:4–5.

**66.** Plaintiff proffers no evidence that Roger T. was acting as the agent of Roger A. in making the statement. Thus, it is not admissible under Rule 801(d)(2)(D). FED.R.EVID. 801(d)(2)(D) ("A statement is not hearsay if . . . [t]he statement is

offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . .").

clear whether the parties were discussing the tax consequences of the loan transaction as a whole. . . . Lewis's conclusory testimony regarding a single, ambiguous statement by Thomason was insufficient to meet this minimum standard" to have case submitted to jury). Accordingly, even if it considered Palma's declaration, the court would grant summary judgment in Roger A.'s favor on the fraudulent transfer claim.[67]

### D. Conspiracy

 Defendants next seek summary judgment on plaintiff's conspiracy claim, arguing that a conspiracy requires that defendants commit a tort, and plaintiff has not shown that a tort was committed. "A civil conspiracy, however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage." *Doctors' Co. v. Superior Court*, 49 Cal.3d 39, 44, 260 Cal.Rptr. 183, 775 P.2d 508 (1989). "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510–11, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994).

Plaintiff argues that its conspiracy claim is based entirely on the "contention that Defendants formed a conspiracy by which they agreed that MGA would transfer its assets to other individuals or entity defendants within or without of the conspiracy, in order to hide or shield those assets from Plaintiff."[68] The court has excluded the only "evidence" plaintiff adduces in support of this claim because of plaintiff's failure to comply with Rule 26(e)

of the Federal Rules of Civil Procedure. Moreover, as noted above, even if the court were to consider the declaration of Joey Palma, it would find that plaintiff had adduced insufficient evidence to raise a triable issue of fact as to whether fraudulent transfers were made. Plaintiff has thus failed to demonstrate that triable issues of fact remain regarding the commission of an underlying tort.

Additionally, plaintiff has offered no evidence tending to show that an agreement existed between any of the defendants to effect fraudulent transfers of MGA's assets to "other entities." See *Wyatt v. Union Mortg. Co.*, 24 Cal.3d 773, 784, 157 Cal.Rptr. 392, 598 P.2d 45 (1979) (to support a claim for civil conspiracy, plaintiff must show that "two or more persons agree[d] to perform a wrongful act . . .").

Thus, summary judgment is properly granted in favor of all defendants on plaintiff's civil conspiracy claim.

### E. Business And Professions Code Section 17200

 Under California's Unfair Business Practices Act, an entity that has engaged, is engaging, or threatens to engage "in unfair competition may be enjoined in any court of competent jurisdiction." CAL. BUS. & PROF. CODE §§ 17201, 17203. Additionally, it may be ordered to make restitution of money or property that may have been acquired by means of the unfair competition. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 173, 96 Cal. Rptr.2d 518, 999 P.2d 706 (2000). "Unfair competition" includes "any unlawful, unfair or fraudulent business act or practice and

---

**67.** Plaintiff asserts generally that Roger T.'s "many" instances of siphoning off assets constitute fraudulent transfer. Plaintiff does not specify the instances to which it refers, and the court declines to make plaintiff's argument for it. See *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the Parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned"); *Forsberg, supra,* 840 F.2d

at 1418 ("The district judge is not required to comb the record to find some reason to deny a motion for summary judgment"). Moreover, as explained above, nothing on the face of MGA's payments to Roger T. suggests that they were improper. As it is plaintiff's burden to adduce affirmative evidence that Roger T. used corporate assets for personal purposes, the court must grant summary judgment in Roger T.'s favor on the fraudulent transfer claim.

**68.** Pl.'s Opp. at 15:8–11.

unfair deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200; see also *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) ("... as relevant here, [§ 17200] defines unfair competition to include any unlawful, unfair or fraudulent business act or practice.... Its coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law.... By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.... However, the law does more than just borrow. The statutory language referring to any unlawful, unfair or fraudulent practice ... makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law. Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. In other words, a practice is prohibited as unfair or deceptive even if not unlawful and vice versa" (internal quotations omitted)); *ABC International Traders, Inc. v. Matsushita Electric Corp. of America,* 14 Cal.4th 1247, 1268, n. 11, 61 Cal.Rptr.2d 112, 931 P.2d 290 (1997). Although what constitutes such a practice "under any given set of circumstances is a question of fact" (*People v. McKale,* 25 Cal.3d 626, 635, 159 Cal.Rptr. 811, 602 P.2d 731 (1979); *Watson Laboratories, Inc. v. Rhone–Poulenc Rorer,* 178 F.Supp.2d 1099, 1117 (C.D.Cal.2001)), plaintiff as the proponent of the claim bears the burden of explaining the manner in which the practices are allegedly unlawful, fraudulent or unfair, and what harm it suffered as a result of them. Plaintiff has not met this burden here.

Citing *State Farm Fire & Cas. Co. v. Superior Court,* 45 Cal.App.4th 1093, 53 Cal. Rptr.2d 229 (1996), plaintiff asserts that "virtually any law can serve as the predicate for an unfair competition action." [69] This may be true, but it does not relieve plaintiff of the burden of articulating precisely how defendants violated the law. Nor does it obviate the necessity for plaintiff to present evidence supporting its contention, and argument demonstrating why the violation constitutes an unlawful business practice under § 17200. The only acts plaintiff specifically references in its opposition are defendants' alleged fraudulent transfers. As explained above, however, plaintiff has not adduced specific evidence showing that there is a triable issue of fact regarding the making of such transfers. As plaintiff's § 17200 claim appears to depend entirely on its fraudulent transfer claim, the court must grant summary judgment in favor of defendants on the § 17200 claim as well.

### F. Bulk Sale Law

▇▇▇ Plaintiff's complaint also states a claim under California's Bulk Sale Law, CAL. COM. CODE §§ 6101, *et seq.* Defendants seek summary judgment on this claim, arguing there is no evidence that they ever participated in a bulk sale of assets. Plaintiff does not respond to defendants' argument in this regard, and has not offered any evidence that defendants participated in such a sale. Accordingly, defendants are entitled to summary judgment on this claim as plaintiff has not shown "that there is a genuine issue for trial." FED.R.CIV.PROC. 56(e); see also *Celotex, supra,* 477 U.S. at 324, 106 S.Ct. 2548 ("Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'"); *Peppers v. U.S. Central Credit Union,* 199 F.Supp.2d 1152, 1164 (D.Kan.2002) ("Plaintiff failed to respond to that portion of defendant's motion asserting that plaintiff is unable to maintain his § 1981 claim where it is premised upon these remaining disparate treatment allegations.... Here, where plaintiff is represented by counsel, the court finds it appropriate to dismiss plaintiff's claims where he (through counsel) has chosen not to oppose the arguments for judgment set forth by defendants. Accordingly, the court finds

---

**69.** Pl.'s Oppn., 16:5–7.

plaintiff has abandoned these remaining four bases for his § 1981 claim"); *Gillespie v. City of Indianapolis,* 13 F.Supp.2d 811, 826 (S.D.Ind.1998) ("Gillespie ... failed to respond to the City's and the United States' motions to dismiss these claims in his response brief, arguing only his Commerce Clause, Tenth Amendment, Fifth Amendment and Contract Clause claims.... Thus, we hold that Gillespie has abandoned his ex post facto and bill of attainder claims").

## III. CONCLUSION

Defendants' motion for summary judgment is granted in its entirety. As the claims against MGA are stayed by its filing of a bankruptcy petition, the court will enter final judgment in favor of the moving parties forthwith, as "there is no just reason for delay." FED.R.CIV.PROC. 54(b).