[No. H011835. Sixth Dist. Mar. 21, 1995.]

MEL DONEY et al., Plaintiffs and Appellants, v.
TRW, INC., Defendant and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part C.

COUNSEL

Liccardo, Rossi, Sturges & McNeil, Gregory D. Hull and Laura Liccardo for Plaintiffs and Appellants.

Berliner & Cohen, William J. Goines, Nancy J. Johnson and Thomas P. Murphy for Defendant and Respondent.

OPINION

**MIHARA, J.**—In February 1988, Richard Wade Farley killed numerous employees of ESL during a murderous rampage in ESL offices in a building

owned by ESL. Plaintiffs are the heirs of some of the ESL employees killed by Farley. Plaintiffs brought a wrongful death action against defendant TRW, Inc., and its wholly owned subsidiary ESL for negligence and premises liability. Summary judgment was entered in favor of ESL based on the exclusive remedy provisions of the Workers' Compensation Act (Lab. Code, § 3602). Defendant TRW thereafter obtained a summary judgment in its favor. Plaintiffs appeal contending that there were triable issues of material fact which precluded summary judgment in TRW's favor. The critical issue on appeal is whether an action can proceed against a parent corporation on an alter ego theory for its subsidiary corporation's conduct when the subsidiary corporation is shielded from such an action by the exclusive remedy provisions of the Workers' Compensation Act. Plaintiffs also claim that summary judgment was precluded because there were disputed factual questions underlying their claim that TRW was directly liable to them because it voluntarily undertook to protect ESL's employees and negligently failed to do so. We affirm the judgment.

ANALYSIS

A. *Standard of Review*

Appellate review of a summary judgment is de novo. (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071 [258 Cal.Rptr. 721]; *Barisich* v. *Lewis* (1990) 226 Cal.App.3d 12, 15 [275 Cal.Rptr. 331].) "First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading. . . . [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. . . . [¶] [If] a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue." (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064, 1065 [225 Cal.Rptr. 203].)

B. *Alter Ego Theory Not Viable*

 Plaintiffs' primary theory of liability was that TRW was liable to them because TRW was the alter ego of ESL, plaintiffs' decedents' allegedly negligent employer. This theory is not legally viable. "The essence of the alter ego doctrine is that justice be done." (*Mesler* v. *Bragg Management Co.* (1985) 39 Cal.3d 290, 301 [216 Cal.Rptr. 443, 702 P.2d 601].)

"The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests." (*Id.* at p. 300.) The critical question is " 'whether in the particular case presented and for the purposes of such case justice and equity can best be accomplished and fraud and unfairness defeated by a disregard of the distinct entity of the corporate form.' " (*Id.* at p. 301.)

■ A parent corporation may be deemed the 'alter ego' of its subsidiary corporation only if there is "such unity of interest and ownership that the separate personalities of the [subsidiary] and the [parent] no longer exist" *and* it appears that " 'if the acts are treated as those of the [subsidiary] alone, an inequitable result will follow.' . . ." (*Id.* at p. 300, citation omitted.) "[T]he corporate wall [will] be breached. Yet the wall remains: the parent is liable through the acts of the subsidiary, but as a separate entity." (*Id.* at p. 301.) ■ The alter ego doctrine is strictly limited by the demands of equity; it applies "only in narrowly defined circumstances and only when the ends of justice so require." (*Id.* at p. 301.) The alter ego doctrine will only be applied to avoid an inequitable result. Alter ego is essentially a theory of *vicarious* liability under which the owners of a corporation may be held liable for harm for which the corporation is responsible where, because of the corporation's utilization of the corporate form, the party harmed will not be adequately compensated for its damages. (*Mesler* at pp. 300, 302-304.)

■ In this case, ESL is the corporation which utilized the corporate form and was allegedly responsible for the harm suffered, and TRW is the owner of ESL. However, the equitable principles underlying the doctrine of alter ego preclude holding TRW liable for the harm for which ESL was responsible. All California employers are required to "secure the payment" of workers' compensation benefits. (Lab. Code, § 3700.) Ordinarily, the employer meets this obligation by obtaining a workers' compensation insurance policy. (Lab. Code, § 3700, subd. (a).) If the employer satisfies this obligation and its employee suffers harm in the course of the employment, workers' compensation benefits are the exclusive remedy available to that employee, the employee is not permitted to bring a legal action against the employer for damages arising from this harm, and the employer is also shielded from an action for equitable indemnity. (Lab. Code, §§ 3600, 3706, 3864.) ESL satisfied its obligation to "secure the payment" of workers' compensation benefits to its employees. Consequently, no legal action could be brought against ESL for harm suffered by its employees in the course of their employment. It is undisputed that the harm for which plaintiffs seek compensation in this action was suffered by ESL's employees in the course of their employment.

The question presented here is whether the owner of a corporation can be held vicariously liable under the equitable doctrine of alter ego for damages

suffered by the employees of the corporation in the course of their employment where the corporation has satisfied its obligation to these employees by securing the payment of workers' compensation benefits. We conclude that the owner cannot be held vicariously liable under the equitable doctrine of alter ego in this situation for many of the same reasons that the hirer of an independent contractor cannot be held vicariously liable to the independent contractor's employees under the equitable doctrine of peculiar risk. (*Privette* v. *Superior Court* (1993) 5 Cal.4th 689 [21 Cal.Rptr.2d 72, 854 P.2d 721].) The California Supreme Court held in *Privette* v. *Superior Court, supra,* 5 Cal.4th 689 that, where an independent contractor has satisfied its obligation to secure the payment of workers' compensation benefits, its employee cannot hold the person who had hired the independent contractor vicariously liable under the equitable doctrine of peculiar risk for harm suffered by the employee in the course of employment. The reasons offered by the California Supreme Court for its refusal to permit liability under the doctrine of peculiar risk in *Privette* mirror our reasons for refusing to permit liability under the doctrine of alter ego here.

■ Peculiar risk, like alter ego, is a theory of vicarious liability which is applied to avoid inequity. (*Privette* v. *Superior Court, supra,* 5 Cal.4th at pp. 694-695.) "[I]n its original form the doctrine of peculiar risk made a landowner liable to innocent bystanders or neighboring property owners who were injured by the negligent acts of an independent contractor hired by the landowner to perform dangerous work on his or her land. In turn, the landowner could sue the contractor for equitable indemnity." (*Id.* at p. 696.) The peculiar risk doctrine was created "to ensure that innocent third parties injured by the negligence of an independent contractor hired by a landowner to do inherently dangerous work on the land would not have to depend on the contractor's solvency in order to receive compensation for the injuries." (*Id.* at p. 694.) Eventually, in 1962, the California Supreme Court expanded the peculiar risk doctrine to permit an independent contractor's employee to recover tort damages from the person who hired the independent contractor. (*Id.* at p. 696.)

In *Privette*, the California Supreme Court overruled its 1962 expansion of the peculiar risk doctrine. The court ruled that since the employee of an independent contractor could not recover in tort from the independent contractor, because the independent contractor was his employer and his recovery was therefore limited by the Workers' Compensation Act's exclusive remedy provisions, the employee could not be permitted to obtain tort damages from the hirer of the independent contractor based on the equitable doctrine of peculiar risk. First, the court explained that permitting application of a theory of vicarious liability under these circumstances "produces

the anomalous result that a nonnegligent person's liability for an injury is greater than that of the person whose negligence actually caused the injury . . . ." (*Privette* v. *Superior Court, supra,* 5 Cal.4th at p. 698.) Second, permitting employees of independent contractors to recover under this theory of vicarious liability "would give those employees an unwarranted windfall." (*Id.* at p. 700.) "[T]o permit such recovery would give these employees something that is denied to other workers: the right to recover tort damages for industrial injuries caused by their employer's failure to provide a safe working environment. This, in effect, would exempt a single class of employees, those who work for independent contractors, from the statutorily mandated limits of workers' compensation." (*Id.* at p. 700.) Third, because equitable indemnity cannot be obtained from the negligent employer, application of the peculiar risk doctrine to permit the hirer to be held liable in tort "places an onerous burden on someone who is 'fault-free.'" (*Id.* at p. 701.)

These three reasons convinced the California Supreme Court that employees should not be permitted to recover tort damages under the equitable doctrine of peculiar risk where workers' compensation benefits are available to them. "[T]he workers' compensation system of recovery regardless of fault achieves the identical purposes that underlie recovery under the doctrine of peculiar risk: It ensures compensation for injury by providing swift and sure compensation to employees for any workplace injury; it spreads the risk created by the performance of dangerous work to those who contract for and thus benefit from such work, by including the cost of workers' compensation insurance in the price for the contracted work; and it encourages industrial safety." (*Privette* v. *Superior Court, supra,* 5 Cal.4th at p. 701.) Accordingly, the doctrine of peculiar risk is unavailable where "the injuries resulting from an independent contractor's performance of inherently dangerous work are to an employee of the contractor, and thus subject to workers' compensation coverage . . . ." (*Id.* at p. 702.)

Similar reasoning applies here. In this case, plaintiffs brought a tort action against the owner (TRW) of the corporation (ESL) which had employed their decedents. Plaintiffs were barred from bringing a tort action against ESL because ESL was covered by the Workers' Compensation Act's exclusive remedy provisions. Instead, plaintiffs sought to hold TRW vicariously liable through the equitable doctrine of alter ego. Like the peculiar risk doctrine addressed in *Privette*, the alter ego doctrine is an equitable theory of vicarious liability. Each of the justifications offered by the California Supreme Court in *Privette* for refusing to permit imposition of vicarious liability is equally applicable here. First, as in *Privette*, permitting the application of a theory of vicarious liability under these circumstances would produce "the anomalous result that a nonnegligent person's [TRW's] liability for an injury is greater than that of the person [ESL] whose negligence

actually caused the injury . . . ." (*Privette* v. *Superior Court, supra,* 5 Cal.4th at p. 698.) Second, also as in *Privette,* permitting employees of subsidiary corporations to recover from the corporate owner under an alter ego theory of vicarious liability "would give those employees an unwarranted windfall" by "exempt[ing] a single class of employees, those who work for [corporations], from the statutorily mandated limits of workers' compensation." (*Id.* at p. 700.) Finally, because of the unavailability of equitable indemnity (Lab. Code, § 3864), application of the alter ego doctrine to permit the owner of the subsidiary corporation to be held liable in tort "places an onerous burden on someone who is 'fault-free.' " (5 Cal.4th at p. 701.)

The owner of a corporation incurs the expense of workers' compensation insurance as a corporate expense which reduces any profits reaped by the owner from the corporation in return for ensuring "swift and sure compensation to employees for any workplace injury" and encouraging industrial safety. Consequently, there is no justification for holding the owner of the corporation liable in tort for workplace injuries to employees of the corporation. Because this scenario is equitable, an employee of the corporation cannot utilize the doctrine of alter ego to hold the owner of the corporation liable in tort for a workplace injury where the corporation has ensured the payment of workers' compensation benefits.

C. *TRW Did Not Independently Breach a Duty to Decedents to Provide Them With Reasonable Security\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

CONCLUSION

The judgment is affirmed.

Cottle, P. J., and Wunderlich, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 20, 1995.

---

\*See footnote, *ante,* page 245.