Filed 1/13/26  Vaya Telecom v. Public Utilities Commission CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VAYA TELECOM, INC., | |
| Petitioner, | G065120 |
| v. | (Cal. P.U.C. Dec. Nos. 23-11-008, 24-12-078) |
| PUBLIC UTILITIES COMMISSION, | O P I N I O N |
| Respondent; | |
| PACIFIC BELL TELEPHONE COMPANY, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING; petition for writ of review. Petition dismissed. Respondent's Motion to Strike. Denied as moot. Petitioner's Request for Judicial Notice. Granted.

iCommLaw and Anita Taff-Rice, for Petitioner.

Christine Hammond, Sophia J. Park, and Tovah Trimming, for Respondent.

No appearance for Real Party in Interest.

\* \* \*

In the underlying proceeding, the Public Utilities Commission (Commission) determined Vaya was liable for damages and a fine relating to an interconnection agreement (ICA) with real-party-in-interest Pacific Bell Company d/b/a AT&T California (AT&T). After Vaya failed to pay and instead dissolved in 2020, the Commission expanded the scope of the proceedings to join Vaya's parent company and its sister corporation. Following an evidentiary hearing, the Commission found Vaya's affiliates were liable under the alter ego doctrine. Vaya filed a petition for a writ of review, arguing the Commission exceeded its authority by applying the alter ego doctrine to impose liability on non-utility companies (See Pub. Util. Code, § 1757, subd. (a)(1) [writ review is available where "[t]he commission acted without, or in excess of, its powers or jurisdiction"].)[1] After independent review (*Center for Biological Diversity, Inc. v Public Utilities Com*. (2025) 18 Cal.5th 293, 335), we conclude Vaya is not an aggrieved party for the purposes of section 1756. Accordingly, we dismiss the petition.

---

[1] All further statutory references are to the Public Utilities Code, unless stated otherwise.

STATEMENT OF THE CASE

I.

FACTUAL BACKGROUND

As stated in the parties' Stipulation Regarding Certification of the Record, the underlying administrative proceeding consisted of three phases. In Phase 1, AT&T filed a complaint in 2017 with the Commission, alleging Vaya had violated the terms of the ICA, including terms the Commission had previously decided in a 2014 decision involving the parties. The Commission resolved Phase 1 in favor of AT&T. In Phase 2, the Commission determined Vaya owed AT&T $3,364,692 for violating the ICA, and fined Vaya $40,000 for violating the 2014 decision. Phase 1 and Phase 2 are not at issue in the instant matter.

In Phase 3, described in further detail below, the Commission imposed liability for AT&T's damages and the fine on Vaya's non-utility affiliates under the alter ego doctrine. The instant "petition does not challenge the Commission's factual findings underlying the . . . application of the alter ego doctrine. Rather, the focus of the petition is on jurisdictional issues, specifically whether the Commission has authority to impose liability on Vaya's non-utility affiliates under the alter ego doctrine."

II.

PHASE 3

On March 15, 2021, the Commission issued a ruling expanding the scope of the proceedings to include an order to show cause (OSC) directing Vaya to explain why it had not paid the amounts assessed in Phase 2. "The OSC will also consider whether the Commission should hold Vaya's affiliates, O1 Communications, Incorporated [its sister corporation] [hereinafter O1 Communications] and potentially O1 Services, LLC, liable for

3

Vaya's compliance obligations . . . as Vaya's alter egos." The third phase was categorized as adjudicatory. An administrative law judge (ALJ) was designated as the presiding officer.

In its written response to the OSC, Vaya explained it had no money to pay the damages award and fine. It argued the Commission could resolve the underlying issues by "simply grant[ing] AT&T's previous requests to disconnect . . . and terminate the AT&T/Vaya ICA. The Commission should also grant Vaya's request to surrender its [license]. This would enable the Commission to exercise its supervisory powers to rectify Vaya's inability to comply with the Commission's order." As to alter ego, Vaya argued it would be contrary to California law to apply the doctrine in this matter. Although Vaya and its affiliates "share the same address, have common ownership and share employees," there is no evidence of a "disregard of the corporate form includ[ing] inadequate capitalization, commingling of assets, or disregard of corporate formalities." "Moreover, O1 Services is not a telecommunications carrier subject to the Commission's jurisdiction."

On July 19, 2021, AT&T filed a complaint against Vaya in superior court seeking to collect on the judgment awarded in Phase 2. The next day, AT&T moved to suspend the hearing on the OSC so it could proceed with its court action, in which it raised similar issues such as alter ego liability. Vaya supported the motion. The ALJ summarily denied the motion.

On September 23, 2021, following discovery, the ALJ joined the O1 Communications and O1 Holding Company (collectively O1 entities) as parties to the proceeding. The basis for joinder was that the O1 entities are "necessary parties to the proceeding based on evidence submitted by Vaya showing how [they] control and manage its operations." O1 Communications was also joined on the specific basis it had participated in the proceeding by

4

requesting to admit exhibits into the evidentiary record. On October 26, 2021, the Commission summarily affirmed the joinder order.

Following an evidentiary hearing, on July 12, 2023, the ALJ issued a presiding officer's decision (POD). In the POD, the ALJ found O1 Holding Company is an alter ego of Vaya, and O1 Communications and Vaya were operated as a single business enterprise.

After Vaya appealed the POD, the Commission issued its decision on the OSC (the "OSC Decision"). In the OSC Decision (P.U.C. Dec. No. 23-11-008), the Commission adopted much of the POD. Specifically, it found "Vaya was operated as a single business enterprise with O1 Communications and that O1 Holding Company was an alter ego of Vaya." As to jurisdiction, the Commission stated: "Under the Telecommunications Act of 1996, the Commission has jurisdiction to arbitrate, interpret, and enforce interconnection disputes, including the contractual charges arising out of interconnection agreements (ICAs). The Commission also has jurisdiction to enforce the Commission's decisions through an OSC pursuant to . . . [s]ections 701, 2107, 2108, and 2113."

On December 6, 2023, Vaya filed a 114-page Application for Rehearing. AT&T objected on the ground the application exceeded the 50-page limit set forth in Commission Rule 16.1. The Commission conditionally dismissed the application, but permitted Vaya to file an amended application for rehearing that complied with the page limit. Thereafter, Vaya filed a 48-page Application for Rehearing.

In its application, Vaya argued the Commission lacked jurisdiction to impose alter ego liability, and it lacked personal jurisdiction over the O1 entities because O1 Communications' license had been revoked on July 1, 2022, and O1 Holding Company had never been a public utility.

5

Vaya also argued the O1 entities were improperly joined, but only addressed the separate and additional basis for joining O1 Communications. Specifically, Vaya argued the ALJ erred in finding O1 Communications participated in the proceedings by moving exhibits into the evidentiary record. Rather, counsel had repeatedly stated counsel was appearing only on behalf of Vaya, and therefore, it was Vaya's counsel who moved the exhibits into the record.

On December 19, 2024, the Commission issued its order modifying Decision 23-11-008 and denying Vaya's application for rehearing (the "Rehearing Decision"). In the Rehearing Decision (P.U.C. Dec. No. 24-12-078), the Commission responded to the issues raised in Vaya's application. It stated it had authority to apply the alter ego doctrine under article XII of the California Constitution and sections 701 and 2107. It had personal jurisdiction, albeit limited, over the O1 entities, even though they are not public utilities, to fulfill its regulatory duties. As to joinder, the Commission noted there were other grounds for joining the O1 entities that Vaya did not challenge. As to the specific ground for joining O1 Communications that was challenged, the Commission contended that despite counsel purportedly acting on Vaya's behalf, counsel's actions constituted a general appearance by O1 Communications. Counsel moved to enter the exhibits for O1 Communications, and thus, acted to benefit it against an alter ego finding via the Commission's formal processes.

III.

Writ Petition

Vaya filed a petition for a writ of review of the OSC Decision and the Rehearing Decision. The writ raises the following two issues: Did the Commission exceed its authority by imposing the court-created equitable

6

remedy of alter ego liability without express legislative authority?[2] If the Commission had authority to impose alter ego liability, does it have authority to impose such liability on non-utility affiliates?

After the Commission filed its answer, on April 7, 2025, we ordered the clerk of this court to issue a writ of review to the Commission. In our order, we stated that "the parties upon further review of the record may wish to file supplemental letter briefs."

Vaya filed a supplemental brief which reiterated and expanded on the arguments in its petition. Additionally, Vaya raised for the first time the claim that the O1 entities were not properly joined as parties to Vaya's OSC proceedings. It disputed the ALJ's basis for joinder, which were that (1) the O1 entities controlled and managed Vaya's operations, and (2) O1 Communications actively participated in the proceeding by requesting to admit exhibits into the evidentiary record.

The Commission moved to strike the portions of Vaya's supplemental briefing relating to joinder based on waiver or forfeiture. The Commission noted the original petition did not reference joinder. More important, in its page-compliant application for rehearing, Vaya did not raise these two grounds to support its improper joinder argument. Vaya opposed the motion to strike, arguing its 116-page application explicitly raised these two grounds, and its 48-page application challenged O1 Communications'

---

[2] Vaya also contended the Commission could not impose alter ego liability based on Corporations Code section 17703.04(b), which codified the doctrine for certain claims brought under the Corporations Code. Because the Commission does not dispute it cannot enforce the Corporations Code, we need not address whether the Corporations Code could provide a basis for the Commission's rulings.

purported attempt to introduce evidence. In light of our conclusion that the petition must be dismissed, we deny the motion to strike as moot.

## DISCUSSION

## I.

## STANDING[3]

Section 1756 provides in relevant part: "Within 30 days after the commission issues its decision denying the application for a rehearing . . . , *any aggrieved party* may petition for a writ of review in the court of appeal . . . for the purpose of having the lawfulness of the original order or decision or of the order or decision on rehearing inquired into and determined." (§ 1756, subd. (a), italics added.) (See *PG&E Corp. v. Public Utilities Com.* (2004) 118 Cal.App.4th 1174, 1218, fn., omitted (*PG&E*) ["It is well settled, however, that we will deny a petition without reaching substantive issues if a petitioner is not in fact aggrieved by an action of the [Commission] and 'the petition is in effect seeking declaratory relief'"]; *San Pablo Bay Pipeline Co., LLC v. Public Utilities Com.* (2015) 243 Cal.App.4th 295, 310 (*San Pablo Bay*) ["Courts will annul a decision by the Commission only if the error demonstrated by the aggrieved party was prejudicial"].) Although section 1756 does not define "aggrieved party," the use of that term in other standing cases provides guidance on its meaning. (See *County of San Mateo v. Workers' Comp. Appeals Bd.* (1982) 133 Cal.App.3d 737, 744 ["[U]nder the rules of

---

[3] The parties originally did not address Vaya's standing. Following our invitation pursuant to Government Code section 68081 to brief this issue, the parties filed supplemental briefing. As part of its supplemental briefing, Vaya filed a Request for Judicial Notice of certain documents, which the Commission opposed. We grant the Request for Judicial Notice because the exhibits are properly subject to judicial notice and relevant to the issues on appeal.

8

construction we must assume that when passing a statute the Legislature is aware of existing related laws [citation], and we must assume the Legislature is aware of pertinent judicial interpretations [citation]"]; *Frediani v. Ota* (1963) 215 Cal.App.2d 127, 133 ["It is a basic rule of statutory interpretation that, when a statute is but one in a series of like statutes and a particular phrase or expression appears in each of them those other statutes may be looked to as a guide to the proper construction or interpretation of the instant statute"].) An "aggrieved" party who has standing to appeal a civil action is "'one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision.'" (*Doe v. Regents of University of California* (2022) 80 Cal.App.5th 282, 293.)

Here, the petition challenges the Commission's imposition of liability under the alter ego doctrine on the O1 entities. The O1 entities are aggrieved by the Commission's actions, but they have not filed or joined in the petition. Moreover, the O1 entities cannot be substituted into this proceeding because they did not file an application for rehearing. (See *Consumers Lobby Against Monopolies v. Public Utilities Com.* (1979) 25 Cal.3d 891, 902 (*CLAM*) ["[W]e are required to deny the entire petition on procedural grounds if certain prerequisites to our jurisdiction are not met. This will occur, for example, if prior to filing in this court the petitioner failed to apply to the commission for a rehearing . . ."], disapproved on another point by *Kowis v. Howard* (1992) 3 Cal.4th 888, 897, fn.2.) Thus, unless Vaya also is an aggrieved party, the petition must be dismissed. (See *Pacific Fertility Cases* (2022) 78 Cal.App.5th 568, 576 ["If jurisdiction is lacking, we 'must dismiss'"].)

## II.

### VAYA IS NOT AN AGGRIEVED PARTY

Vaya contends it is an aggrieved party because: (1) its due process rights were violated by an ultra vires act of the Commission; (2) it was harmed financially due to the imposition of a fine in the Phase 3 alter ego proceeding; (3) its reputation and the reputation of its officers were harmed by the alter ego ruling; and (4) it is aggrieved by subsequent litigation relying on the Commission's alter ego ruling.

To the extent Vaya is aggrieved based on the facts set forth in contentions (2) through (4) above, Vaya did not assert those facts as grounds for reversal in its application for rehearing or in its petition for a writ of review. Thus, it cannot assert those grounds now to establish it is aggrieved. (See, e.g., *Southern Cal. Edison Co. v. Public Utilities Com.* (2002) 101 Cal.App.4th 982, 996 [failure to "specifically address the alleged error" in the application for rehearing waived right to "raise it before this court"]; *Estate of Kempton* (2023) 91 Cal.App.5th 189, 202 [even someone "aggrieved by asserted error on one narrow, discrete issue may not appeal on other issues that only affect the interests of a nonappealing third party"].)

We turn to Vaya's remaining contention, which is based on its claim it was compelled to respond to the OSC to explain why its liability should not be imposed on the O1 entities pursuant to the alter ego doctrine. But it is unclear why Vaya was compelled to respond. There was no threat of sanctions for failure to respond. The only "harm" for failure to respond to the OSC would be that the O1 entities are found to be alter egos, but that result does not indicate how Vaya itself was aggrieved. In any event, there was no ultra vires act. As discussed below, the Commission acted within its

10

jurisdiction to apply the alter ego doctrine to third parties who are not public utilities.

A. *Alter ego doctrine*

"Alter ego is essentially a theory of *vicarious* liability under which the owners of a corporation may be held liable for harm for which the corporation is responsible where, because of the corporation's utilization of the corporate form, the party harmed will not be adequately compensated for its damages." (*Doney v. TRW, Inc.* (1995) 33 Cal.App.4th 245, 249.) "'[T]he corporate wall [will] be breached. Yet the wall remains: the parent is liable through the acts of the subsidiary, but as a separate entity.'" (*Ibid.*)

"Generally, alter ego liability is reserved for the parent-subsidiary relationship. However, under the single-enterprise rule, liability can be found between sister companies. The theory has been described as follows: "'In effect what happens is that the court, for sufficient reason, has determined that though there are two or more personalities, there is but one enterprise; and that this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements of it. The court thus has constructed for purposes of imposing liability an entity unknown to any secretary of state comprising assets and liabilities of two or more legal personalities; endowed that entity with the assets of both, and charged it with the liabilities of one or both.'"" (*Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1249-1250.)

Vaya argues the Commission lacks jurisdiction to impose the alter ego doctrine because it is a common law equitable doctrine applied by the courts pursuant to their constitutional powers. It further argues the constitutional and statutory provisions cited by the Commission do not authorize the imposition of an equitable remedy such as alter ego liability.

11

We disagree. Vaya "fails to explain why the courts should have exclusive authority to employ equitable or legal principles or defenses merely because such principles or defenses developed in the courts." (*Lentz v. McMahon* (1989) 49 Cal.3d 393, 406.) Moreover, "the Commission has equitable power when it is performing judicial functions." (*San Pablo Bay*, *supra*, 243 Cal.App.4th at p. 316.)

As the California Supreme Court has explained: "The commission is a state agency of constitutional origin with far-reaching duties, functions and powers. (Cal.Const., art. XII, §§ 1-6.) The Constitution confers broad authority on the commission to regulate utilities, including the power to fix rates, establish rules, hold various types of hearings, award reparation, and establish its own procedures. (*Id.*, §§ 2, 4, 6.) The commission's powers, however, are not restricted to those expressly mentioned in the Constitution: 'The Legislature has plenary power, unlimited by the other provisions of this constitution but consistent with this article, to confer additional authority and jurisdiction upon the commission . . . .' (Cal.Const., art. XII, § 5.) [¶] Pursuant to this grant of power the Legislature enacted . . . section 701, conferring on the commission expansive authority to "*do all things*, whether specifically designated in (the Public Utilities Act) *or in addition thereto*, which are necessary and convenient' in the supervision and regulation of every public utility in California. . . . The [C]ommission's authority has been liberally construed. [Citations.] Additional powers and jurisdiction that the commission exercises, however, 'must be cognate and germane to the regulation of public utilities . . . .'" (*CLAM*, supra, 25 Cal.3d at pp. 905–906.)

The high court held the Commission has "well established and well understood judicial power." (*CLAM*, *supra*, 25 Cal.3d at p. 906.) "[T]he [C]ommission's judicial powers are not coextensive with those exercised by

12

courts. There is, nevertheless, a significant coincidence of powers between the two, including those that are *equitable* in nature." (*Ibid.,* italics added.) As to the issue before the high court in *CLAM*, it concluded "the [C]ommission possesses equitable power to award attorney fees under the common fund doctrine in quasi-judicial reparation actions." (*Id.* at p. 908, fn. omitted.)

Similarly here, the underlying proceeding was adjudicatory. In exercising its judicial power, the Commission had the authority to apply equitable doctrines and principles when appropriate, including the alter ego doctrine. (See, e.g., *San Pablo Bay*, *supra*, 243 Cal.App.4th at p. 316 ["[W]e conclude that the Commission has the equitable power to apply equitable tolling or equitable estoppel *in the limited circumstances of this case*"].)

B. *Personal Jurisdiction over Non-public utility Entities*

The Commission generally only has personal jurisdiction over public utilities. (See *County of Inyo v. Public Utilities Com.* (1980) 26 Cal.3d 154, 164.) At the time the decisions were issued, the O1 entities were not public utilities. Nevertheless, under the appropriate circumstances, the Commission may have jurisdiction over entities other than public utilities. *PG&E*, *supra*, 118 Cal.App.4th 1174 is illustrative.

In *PG&E*, the parent holding companies of three utilities, challenged the jurisdiction of the Commission, "seek[ing] to be dismissed from a pending [Commission] proceeding investigating actions taken by the holding companies and their utility subsidiaries during the electricity energy crisis of 2000 and 2001." (*PG&E, supra,*118 Cal.App.4th at p. 1181.) The holding companies were not themselves public utilities; they were formed after the Commission approved the reorganization of the three utilities under a holding company structure. The reorganization was "subject to certain conditions referred to as the holding company conditions. The holding

13

company conditions were intended to protect ratepayers and to address the potential for abuse arising from the holding company structure." (*Ibid.*) The pending investigation concerned whether the companies were violating one of these conditions. (*Id.* at p. 1182.)

The appellate court concluded that under section 701, the Commission had jurisdiction over the holding companies because "the [Commission]'s exercise of limited jurisdiction over the holding companies is cognate and germane to its regulation of a public utility, namely, the utility subsidiary of the holding company." (*PG&E, supra*, 118 Cal.App.4th at p. 1201.) "The primary limiting factor on [Commission] jurisdiction is that the [Commission]'s action must be cognate and germane to utility *regulation*. We do not suggest that the [Commission] has enforcement authority over entities other than public utilities simply because it has the power to approve certain transactions involving public utilities subject to conditions. The conditions and the [Commission]'s interest in their enforcement must directly relate to some aspect of utility regulation. In these actions, there is little doubt that the disputed holding company conditions are germane to aspects of the [Commission]'s regulatory authority over the subsidiary utilities. Accordingly, absent a specific legislative directive prohibiting the [Commission] from enforcing conditions it is empowered to impose, we conclude the [Commission] has jurisdiction under the circumstances presented here to enforce the conditions in a proceeding before the [Commission]." (*Ibid.*)

Similarly, in this case, the Commission has limited jurisdiction over the O1 entities to resolve the dispute between AT&T and Vaya over their ICA, which was properly before the Commission. After the Commission resolved the issues against Vaya, the Commission was presented with

14

evidence suggesting Vaya was evading its contractual obligations, as determined by the Commission in its decisions. To prevent an inequitable result, the Commission joined the O1 entities and imposed alter ego liability on them after an evidentiary hearing before a presiding officer. These actions were "cognate and germane" to its regulation of AT&T and Vaya and their specific ICA. Under these circumstances, we conclude the Commission did not act in excess of its authority to impose alter ego liability on the O1 entities.

In summary, Vaya is not aggrieved by the alleged ultra vires act of the Commission. Because it is not aggrieved, it cannot assert claims on behalf of third parties under the third-party standing doctrine. (See *Yelp Inc. v. Superior Court* (2017) 17 Cal.App.5th 1, 7 [litigant may assert claims on behalf of third parties only where: "'(1) the litigant suffers a distinct and palpable injury in fact, thus giving him or her a concrete interest in the outcome of dispute; (2) the litigant has a close relationship to the third party such that the two share a common interest; and (3) there is some hindrance to the third party's ability to protect his or her own interests'"].) Thus, Vaya lacks standing to petition for a writ of review under section 1756, and the petition must be dismissed.

DISPOSITION

The petition is dismissed. Respondent shall recover its costs on appeal.

DELANEY, ACTING P. J.

WE CONCUR:

GOODING, J.

SCOTT, J.

16