Filed 4/2/26  C4 Distribution Co. v. Spark Enterprises CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| C4 DISTRIBUTION CO. LLC, | |
| Plaintiff and Appellant, | G065228 |
| v. | (Super. Ct. Case No. 30-2023-01328541) |
| SPARK ENTERPRISES, LLC et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, James Hansen, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.) Affirmed.

Callahan & Blaine, Edward Susolik, Michael J. Sachs, and Brett E. Bitzer for Plaintiff and Appellant.

Venable, Adam M. Weg, and Rodney S. Lasher, for Defendants and Respondents.

*       *       *

C4 Distribution Co. LLC (C4) appeals from an order of the superior court denying its motion to amend its judgment against respondents Spark Enterprises, LLC (Spark) and RD Lynwood South, a California corporation, (RD) to add three related parties as judgment debtors under the alter ego doctrine. We conclude C4 failed to show the related parties were alter egos of respondents. Accordingly, we affirm.

STATEMENT OF THE CASE

I.

UNDERLYING PROCEEDINGS

Spark was formed on January 25, 2017, and RD was incorporated on February 16, 2017, for the sole purpose of operating a cannabis business in the City of Lynwood (City). Ryan Oganesian and Darrin Oganesian (collectively, Oganesian) are the only managers of Spark, and at all times, OG Ventures has been the sole member of Spark. The Oganesians are the owners and managers of OG Ventures. OG Ventures is also the sole shareholder of RD. Ryan is the president of RD, and Darrin is the secretary of RD. RD has no other managers or employees.

On January 2, 2018, RD entered into a Development Agreement with the City, which allowed respondents to legally operate a cannabis business in the City. On March 15, 2019, respondents and C4 entered into a management agreement, wherein C4 would manage respondents' cannabis business in exchange for a "license fee."

On November 19, 2020, respondents initiated arbitration against C4 for alleged breaches of the management agreement. In response, C4

2

asserted counterclaims against respondents. On May 24, 2023, the arbitrator found in favor of C4 on one of its counterclaims, and awarded $317,335 in damages and $346,477 in attorney fees and costs. On November 2, 2023, the trial court confirmed the arbitration award and entered judgment against respondents.

## II.

### MOTION TO AMEND JUDGMENT

On November 13, 2024, C4 filed a motion to amend judgment, seeking to add the Oganesians and OG Ventures as alter ego judgment debtors. In its memorandum in support of the motion, C4 argued it met its burden to show: (1) the alleged alter ego entities had control of the underlying litigation; (2) there is a unity of interest and ownership among the parties; and (3) that an inequitable result would follow if the motion was denied. As to the first factor, C4 argued the Oganesians and OG Ventures "were in charge of [respondents]," and Ryan Oganesian appeared on behalf of respondents during the arbitration.

As to the second factor, C4 argued the Oganesians "purposefully and strategically undercapitalized [respondents] in order to make [them] judgment proof." Specifically, OG Ventures never made "capital contributions" to respondents, but instead the Oganesians and OG Ventures "'loaned'" respondents in excess of $800,000 from 2017 through 2022. C4 also claimed that respondents failed to follow corporate formalities. Specifically, "Spark has no operating agreement or corporate minutes." (Italics and boldface omitted.) "RD has no corporate minutes." "RD has an unsigned Shareholder's Agreement," and no stock certificate reflecting its ownership by OG Ventures, LLC. Respondents also failed to timely file tax returns for years 2017 through 2019, and instead, they filed their tax returns for those

3

years after May 2021. C4 also argued the Oganesians or OG Venture personally having been paying respondents' debts since respondents have no assets. Finally, the shared ownership and shared business location supported application of the alter ego doctrine.

As to the third factor, C4 argued it would be inequitable to deny the motion because if the motion is not granted, "C4 will never be able to collect the Judgment."

### III.

### OPPOSITION TO MOTION TO AMEND JUDGMENT

Respondents opposed the motion, arguing C4 failed to show the alter ego doctrine should be applied in this case. As to the first factor for application of the alter ego doctrine (control and representation), respondents argued the Oganesians and OG Ventures were not virtually represented in the underlying litigation because no claims were made against them and Ryan Oganesian only appeared in his capacity as an officer for respondents, not in his individual capacity. As to the second factor (unity of interest and ownership), respondents argued that they were adequately capitalized and the loans are, as a matter of law, the equivalent of additional capitalization. Respondents also argued they maintained corporate formalities such as filing and maintaining incorporation and organization documents. They contended they were not required to keep minutes because they never held any proceedings, and that the unsigned Shareholder's Agreement was prepared in the event RD became successful and outsider investors became additional shareholders, which did not occur. As to the third and final factor (inequitable result), respondents argued the failure to satisfy a judgment is insufficient, standing alone, to show an inequitable result. Additionally,

4

respondents argued C4 failed to show bad faith, such as evidence the respondents' assets were diverted to avoid paying creditors.

In a supporting declaration, Ryan Oganesian stated: "When Respondents were formed, my brother and I, through OG Ventures, provided initial start-up capital to Respondents of at least $253,175.31, the amount of which was recorded in Respondents' accounting statement and attached to C4's Compendium of Exhibits, Exhibit 30. OG Ventures also contributed $10,000 in initial start-up capital to Respondents. In addition to these amounts, we infused cash into Respondents, through OG Ventures, at formation (labelled as loans) totaling $363,642. *See* C4's Compendium of Exhibits[,] Exhibit 30. After formation, we infused additional cash, through OG Ventures, into Respondents as necessary to meet their obligations during operations, which began in 2019." He further stated: "Although some cash infusions after formation were labelled as loans, the loans were not secured or documented, and there has been no repayment of those loans. The only entities and individuals that infused cash into Respondents were the owners, through OG Ventures. . . . Moreover, OG Ventures, myself, and my brother never extracted any funds from [respondents], either before or after the judgment."

IV.

REPLY TO OPPOSITION

In response, C4 argued it established all three factors. As to the first factor, the Oganesians and OG Ventures are in complete control and were virtually represented in the underlying litigation because OG Ventures paid all of respondents' legal fees and the Oganesians are the only managers. As to the second factor, C4 disputed Ryan Oganesian's claim that OG Ventures made capital contributions, arguing respondents' bank accounts do

5

not reflect any capital contributions and their tax returns and financial statement do not reflect "capital contributions from OG Ventures, LLC in excess of a million dollars." Additionally, it is undisputed that respondents failed to timely file tax returns for years 2017 through 2019, and that the Oganesians and OG Ventures are currently paying all of respondent's debts and obligations, including rent. As to the third factor, C4 argued that respondents' formation showed they were established to be judgment proof and to be operated as "mere shell[s]."

V.

RULING ON MOTION TO AMEND JUDGMENT

On February 18, 2025, the trial court denied C4's motion to amend the judgment. It concluded C4 "failed to demonstrate unity of interest and ownership and an inequitable result." As to unity of interest and ownership, the court found "only two factors (identical ownership and possible use of the same offices) could support application of the alter ego doctrine. There is no evidence here of commingling of funds and assets, treatment by an individual of the assets of the corporation as his own, or the use of the entity as a mere shell. The evidence is also insufficient to show undercapitalization and lack of corporate formalities." Specifically, as to undercapitalization, the court noted C4 failed to refute Ryan Oganesian's declaration that OG Ventures provided as least $253,175 in capital contribution as evidenced by Exhibit 30 and it failed to show the loans should not count as capital contributions. As to inequity, the court determined C4 failed to present evidence to show the Oganesians purposefully and intentionally grossly undercapitalized respondents in order to make them, at all times, judgment proof.

C4 timely appealed.

6

DISCUSSION

I.

AMENDING JUDGMENT TO ADD ALTER EGO

"The authority of a court to amend a judgment to add a nonparty alter ego as a judgment debtor has long been recognized. [Citation.] 'The ability under [Code of Civil Procedure] section 187 to amend a judgment to add a defendant, thereby imposing liability on the new defendant without trial, requires *both* (1) that the new party be the alter ego of the old party *and* (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns.'" (*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1106.)

"Alter ego is essentially a theory of *vicarious* liability under which the owners of a corporation may be held liable for harm for which the corporation is responsible where, because of the corporation's utilization of the corporate form, the party harmed will not be adequately compensated for its damages." (*Doney v. TRW, Inc.* (1995) 33 Cal.App.4th 245, 249.) Stated differently, the two general requirements for an alter ego finding are: "'(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow.'" (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300 (*Mesler*).)

"The factors which may show the 'unity of interest' issue vary according to each case and are fact specific. [Citation.] Among the facts which can be considered are financial issues (e.g., was the corporation adequately capitalized?); corporate formality questions (e.g., was stock issued, are

7

minutes kept and officers and directors elected, are corporate records segregated?); ownership issues (e.g., what is the stock ownership picture?); commingling issues (e.g., are corporate assets commingled, does the parent company merely use the corporate shell of the subsidiary to obtain goods and services for the parent company?); etc." (*Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269, 1285, fn. 13, citing *Associated Vendors, Inc. v. Oakland Meat Co.* (1962) 210 Cal. App. 2d 825.)

As to the requirement for an inequitable result, "[t]he essence of the alter ego doctrine is that justice be done. 'What the formula comes down to, once shorn of verbiage about control, instrumentality, agency, and corporate entity, is that liability is imposed to reach an equitable result.' [Citation.] Thus the corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require." (*Mesler, supra,* 39 Cal.3d at p. 301; see *Las Palmas Associates v. Las Palmas Center Associates* (1992) 235 Cal.App.3d 1220, 1249 (*Las Palmas*) ["Because society recognizes the benefits of allowing persons and organizations to limit their business risks through incorporation, sound public policy dictates that imposition of alter ego liability be approached with caution"].) "The alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form. Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard." (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 539 (*Sonora Diamond*).)

8

## II.

### STANDARD OF REVIEW

Generally, "[t]he decision to grant an amendment lies in the sound discretion of the trial court." (*Relentless Air Racing, LLC v. Airborne Turbine Ltd. Partnership* (2013) 222 Cal.App.4th 811, 815.) "Whether the evidence has established that the corporate veil should be ignored is primarily a question of fact which should not be disturbed when supported by substantial evidence." (*Las Palmas. supr*a, 235 Cal.App.3d at p. 1248.)

However, in this case the trial court denied the motion to amend based on C4's "fail[ure] to demonstrate unity of interest and ownership and an inequitable result." "When the trier of fact has expressly or implicitly concluded that the party with the burden of proof failed to carry that burden and that party appeals, it is somewhat misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. This is because such a characterization is conceptually one that allows an attack on (1) the evidence supporting the party who had no burden of proof, and (2) the trier of fact's unassailable conclusion that the party with the burden did not prove one or more elements of the case. [Citations.] Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination

that it was insufficient to support a finding."' (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 279.)[1]

## III.

### THE TRIAL COURT PROPERLY DENIED THE

### MOTION TO AMEND JUDGMENT

C4 argues it is "undisputed" there is a unity of interest between the Oganesians/OG Ventures and RD/Spark because: (1) "[i]t is undisputed RD and Spark were never capitalized"; (2) the Oganesians and OG Ventures paid RD's debts in June 2020 and respondents' current rents, and it can be

---

[1] Citing *People v. Manzilla* (2022) 80 Cal.App.5th 891, C4 argues the standard of review in this case is de novo because the trial court made its ruling denying the motion based on written declarations and oral arguments. We disagree. *Manzilla* did not involve a motion to amend a judgment or the alter ego doctrine. (See *id.* at p. 903 [applying independent standard of review to a motion under Penal Code section 1473.7].) Moreover, as the California Supreme Court has stated, "when reviewing a ruling under the substantial evidence standard, 'an appellate court should defer to the factual determinations made by the trial court,' regardless of 'whether the trial court's ruling[s are based] on oral testimony or declarations.'" (*People v. Vivar* (2021) 11 Cal.5th 510, 528, fn. 13.)

The standard of review is one of several reasons why C4's reliance on *Triyar Hospitality Management, LLC v. WSI (II)—HWP, LLC* (2020) 57 Cal.App.5th 636 (*Triyar*) is misplaced. First, *Triyar* expressly held that "the standard of review of an order amending the judgment adding alter ego parties is abuse of discretion." (*Id.* at p.640.) Second, in that case, the appellate court affirmed an order *granting* an order amending the judgment, whereas in this case, we are reviewing an order *denying* a motion to amend the judgment. (See *id.* at p. 638.) Third, the appellate court found substantial "overwhelming evidence" supported the alter ego finding. (See *id.* at pp. 641–642.) As discussed below, we conclude otherwise. Thus, *Triyar* is legally and factually distinguishable.

inferred they paid Spark's rent in 2017 because Spark had no assets; (3) respondents failed to follow corporate formalities by not timely filing tax returns and having no loan documents, and RD has no stock certificate reflecting its ownership by OG Ventures; and (4) respondents are owned by members of the same family and Spark has the same business location as OG Ventures.

C4, however, does not address the trial court's finding crediting Ryan Oganesian's declaration that Exhibit 30 reflects a capital contribution of $253,175 to respondents. Moreover, in the case of closely held companies such as respondents, "there is no substantial difference between a capital contribution and an interest-free loan." (*Sonora Diamond*, *supra*, 83 Cal.App.4th at p. 548, fn. omitted.) In sum, there is no uncontradicted evidence that would compel a finding of undercapitalization.[2]

As for the remaining evidence, they do not compel a finding of unity of interest. The trial court found shared ownership and possible shared business location, but, as the court properly concluded, those facts are insufficient by themselves to compel a finding of unity of interest. (See *Leek v. Cooper* (2011) 194 Cal.App.4th 399, 415 ["An allegation that a person owns all of the corporate stock and makes all of the management decisions is insufficient to cause the court to disregard the corporate entity"].) The failure to *timely* file tax returns does not compel a finding that there was a disregard of corporate form. Rather, it could reflect lack of professionalism or negligence by the managers. The same reason would apply to the failure to maintain a stock certificate or loan documents. Finally, that the Oganesians

---

[2] Even if reviewed for substantial evidence, Ryan Oganesian's testimony and Exhibit 30, which shows "Start-up Costs" of $253,173, would support a factual finding that respondents were not undercapitalized.

11

and OG Ventures paid respondents' debts in 2020 and later do not compel a finding there was a unity of interest. (See *Sonora Diamond, supra,* 83 Cal.App.4th at p. 547 [noting that it is normal for an owner of an unprofitable company to provide ongoing financial support because "[i]f such an owner wishes to remain in business in the anticipation of ultimately turning a profit, one option is to use its own assets to make up for the business's inability to generate sufficient revenue to cover all its costs"].)  In sum, C4 has not shown the evidence would compel a finding in its favor on the second factor of the alter ego test as a matter of law.

As to the third factor of the alter ego test, C4 has not shown an inequitable result would follow in the absence of an alter ego finding. The inability to collect on the judgment is insufficient. "The alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form. Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard." (*Sonora Diamond, supra,* 83 Cal.App.4th at p. 539.) Evidence that the Oganesians purposefully and intentionally grossly undercapitalized respondents in order to make them, at all times, judgment proof would show inequity, but as discussed above, the evidence does not compel a finding of undercapitalization as a matter of law. In sum, the trial court did not err in denying C4's motion to amend the judgment.

DISPOSITION

The order is affirmed. Respondent shall recover costs on appeal.


DELANEY, J.


WE CONCUR:


MOORE, ACTING P. J.


SANCHEZ, J.